**James L. ROSE and Judy S. Rose, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 88–1012.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 14, 1988.

Decided Feb. 27, 1989.

Robert L. Ackerson (argued), Kristine Kaiser, Ackerson, Blandford & Kiser, Jeffrey C. Sauer, Louisville, Ky., for petitioners-appellants.

William F. Nelson, I.R.S., Gary R. Allen, Chief Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., Janet K. Jones, William S. Rose, Jr., Richard Farber (argued), for respondent-appellee.

Before KENNEDY, MARTIN and NORRIS, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

James L. and Judy S. Rose, the taxpayers, appeal from the tax court's determination, 88 T.C. 386 (1987). The tax court found that their purchase of "reproduction masters" of Picasso originals from Jackie Fine Arts lacked economic substance apart from anticipated tax benefits. It also concluded that the taxpayers were not entitled to depreciation or miscellaneous deductions or investment tax credits on the property acquired and, in addition, they were liable for additional interest under § 6621(d)[1] which provides for interest on substantial underpayments attributable to tax motivated transactions.

The taxpayers reported zero income and depreciation expenses of $125,766.00 in art print activity under the business name Lecia Arts on Schedule C to their 1979 Income Tax Returns which governs profit or loss from business or profession. The depreciation was computed by applying the double

---

1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue.

declining balance method to a basis of $1,100,000.00 for the two Picasso "reproduction masters" purchased on December 26, 1979, plus first year depreciation of $4,000.00. The taxpayers also claimed an investment tax credit on Form 3468 of which $110,000.00 was attributed to the Picasso packages. The taxpayers reported 1979 taxable income exceeding $460,000.00. On a 1980 joint individual income tax return, the taxpayers attached a Schedule C reporting art print activity under the name Lecia Arts and claimed depreciation of $341,795.00, interest of $76,331.00, and miscellaneous expenses totaling $1,144.00. The depreciation expenses related to a total of three Picasso packages. On Form 3468 for 1980, the taxpayers claimed an investment tax credit of $55,000.00 attributable to a third Picasso package acquired in June, 1980. The taxpayers reported 1980 taxable income exceeding $550,000.00.

Using intermediaries, on December 26, 1979, the taxpayers entered into two contracts with a corporation called Jackie Fine Arts to purchase two Pablo Picasso "reproduction masters." A reproduction master is a photo screen negative used to produce an image but does not include the original work of art created by the artist. The "master" referred to in the purchase and security agreement between the taxpayers and Jackie Fine Arts was a "four by five inch color transparency" apparently taken from a thirty-five millimeter slide photograph of the original artwork and costing approximately $200.00 to produce.

Without investigation of the highly sophisticated art market into which they were entering, the taxpayers paid a total of $550,000.00 for the package. They allocated $545,000.00 to the master and $5,000.00 to the copyright. An additional $5,000.00 was specified as the cost of production of a limited edition of 500 prints and 1,000 posters produced from the image. In the December 26, 1979 negotiation meeting between the taxpayers and Jackie Fine Arts, the taxpayes did not receive or have available any independent appraisals of the value of the Picasso packages before selecting images. The reproductions and posters taken from the "master" image had no proven market or marketability. At trial, the taxpayers had two highly inflated appraisals of each Picasso package but neither appraiser could provide any data to support their assertions as to the sales potential of the reproductions and posters. The fair market value of Picasso packages acquired by the taxpayers in 1979 and 1980 was negligible. In April 1980, petitioners organized a sole proprietorship with the trade name Lecia Arts for the stated purpose of distributing limited edition prints and posters. They elected accrual accounting for Lecia Arts. In June 1980, petitioners acquired a third Picasso package on the same terms as the December 1979 purchases.

The taxpayers admit that tax considerations played a substantial role in their decision to acquire the Picasso packages. The records of their tax accountant at the time of the initial acquisition reflect the fact that he considered his function as one of advising the taxpayers with respect to a "tax shelter." The information sought and received from Jackie Fine Arts focused primarily on the tax advantages to be obtained. The taxpayers were not acquainted with the art reproduction or print making business and neither sought nor received information on how to exploit commercially the Picasso packages prior to their acquisition in December 1979. They never obtained any independent valuation information or distribution information. They never entered into distribution agreements with anyone. The evidence indicates that they were indifferent to the real value of the Picasso packages and had very little knowledge of the art world.

In a statutory notice of deficiency dated June 8, 1983, the Commissioner disallowed all of the Schedule C losses and investment tax credits claimed for 1979–1980 relating to the Picasso packages. The Commissioner determined that (1) the losses were not incurred in an activity entered into for profit, (2) the art masters were not used or available for use during 1979, and (3) the taxpayers had not established a depreciable basis, the useful life of the art masters, or the propriety of the depreciation method

used. The Commissioner disallowed miscellaneous deductions because the taxpayers had not established that the deductions represented ordinary or necessary business expenses. The Commissioner disallowed the investment tax credits because the taxpayers had not established that the art masters qualified for investment credit and did not establish the basis of the art masters. The tax court held that the taxpayers' acquisition of Picasso packages from Jackie Fine Arts in 1979 and 1980 was motivated primarily, if not exclusively, by tax considerations. The tax court further held that the taxpayers did not have an actual and honest profit objective in acquiring the Picasso packages, and the transactions were devoid of economic substance and were merely a means to reduce tax liability. The taxpayers failed to come forward with any credible evidence to the contrary. *Welch v. Helvering,* 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.

The taxpayers' right to both depreciation deductions under § 167(a) and investment tax credits under § 48(a)(1) is contingent upon showing that their activities constituted either a "trade or business" or were undertaken and carried on "for the production of income." *Bishop v. Commissioner,* 342 F.2d 757, 759 (6th Cir.1965).[2]

Whether the taxpayers used the Picasso packages in a "trade or business" or held them "for the production of income" is a question of fact. The tax court findings of fact on this issue shall not be overturned unless clearly erroneous. *Roth Steel Tube Co. v. Commissioner,* 800 F.2d 625, 629 (6th Cir.1986); *Mahoney v. Commissioner,* 808 F.2d 1219, 1220 (6th Cir.1987); *Sochin v. Commissioner,* 843 F.2d 351, 353 (9th Cir.1988); *Collins v. Commissioner,* 857 F.2d 1383, 1385 (9th Cir.1988); *United States v. American Bar Endowment, et al.,* 477 U.S. 105, 115–16, 106 S.Ct. 2426, 2432–33, 91 L.Ed.2d 89 (1986). *See also*

26 USC § 7482 (renders Fed.R.Civ.P. 52(a) applicable to review of tax court decision). This court will not inquire into whether a transaction's primary objective was for the production of income or to make a profit, until it determines that the transaction is bona fide and not a sham. *Mahoney v. Commissioner,* 808 F.2d at 1220; *Sochin v. Commissioner,* 843 F.2d at 354; *Collins v. Commissioner,* 857 F.2d at 1385. The proper standard in determining if a transaction is a sham is whether the transaction has any practicable economic effects other than the creation of income tax losses. *Mahoney v. Commissioner,* 808 F.2d at 1220; *Collins v. Commissioner,* 857 F.2d at 1385. A taxpayer's subjective business purpose and the transaction's objective economic substance may be relevant to this inquiry. *Sochin v. Commissioner,* 843 F.2d at 354.

We review *de novo* the legal standard applied by the tax court in determining whether or not a transaction is a sham. *Roth Steel Tube Co. v. Commissioner,* 800 F.2d 625, 629 (6th Cir.1986); *Walter v. Commissioner,* 753 F.2d 35, 38 (6th Cir. 1985); *Sochin v. Commissioner,* 843 F.2d at 353.

The taxpayers argue that the "generic tax shelters" standard applied by the tax court is not authorized or permitted under law. Under the "generic tax shelter" test, the tax court determined whether the taxpayer's transaction was a generic tax shelter and then determined whether the transaction had economic substance. The tax court outlined several characteristics that would constitute a generic tax shelter.

We choose not to adopt the generic tax shelter test because it does not aid us in the basic inquiry as to whether the transaction had any practicable economic effect other than the creation of income tax losses. As the Ninth Circuit stated in *Collins v. Commissioner,* 857 F.2d at 1386:

---

**2.** In order to claim depreciation deductions with respect to their acquisition of the Picasso packages, the taxpayers must demonstrate that the packages were used either in a "trade or business" or were held "for the production ...

of income" within the meaning of § 167(a). Under § 48(a)(1), investment tax credits are allowable only for property with respect to which depreciation is allowable.

The case books are already glutted with tests. Many such tests proliferate because they give the comforting illusion of consistency and precision. They often obscure rather than clarify.

Whether characterized as a "generic tax shelter" test or a two-prong subjective/objective analysis, the essential inquiry is whether the transaction had any practicable economic effect other than the creation of economic tax losses.

Though characterized as a generic tax shelter test, the tax court examined the taxpayers profit motive and the economic substance of their venture. The tax court looked past the taxpayers' particular transaction involving the Picasso packages and uncovered its substance. As the tax court stated:

> [The taxpayers'] acquisition of the Picasso packages from Jackie Fine Arts in 1979 and 1980 was motivated primarily, if not exclusively, by tax considerations. There was no reasonable possibility that the items produced from the Picasso packages would generate sales sufficient for [the taxpayers] to recoup their cash investment. [Taxpayers] were relying on recovering their cash investment by immediate tax deductions and credits. The [taxpayers] did not have an actual and honest profit objective in acquiring the Picasso packages, and the transactions were devoid of economic substance.

In sum, the tax court's analysis is correct and consistent with the analysis traditionally applied by this circuit in determining whether a particular transaction is a sham. *Mahoney v. Commissioner*, 808 F.2d 1219, 1220 (6th Cir.1987).

The record of the tax court is full of evidence to support its facutal findings that the taxpayers had no honest profit motive and that the Picasso venture was completely void of economic substance. The tax court noted that the taxpayers admitted that tax considerations played a major part in their decision to acquire the Picasso packages. Their investment advisor and tax accountant at the time of the initial acquisition of the packages considered his function to be advising the petitioners with respect to tax shelters. The information sought and received from Jackie Fine Arts focused primarily on the tax advantages of purchasing the packages. Taxpayers never obtained any information on the commercial viability of the packages. At no time did the taxpayers obtain any independent art appraisals. They never entered into distribution agreements with anyone. The evidence also clearly indicates that they were indifferent to the real value of the Picasso packages. They blindly accepted the exaggerated values claimed by Jackie Fine Arts. Any inquiry by the taxpayers would have readily shown that the claims of value made by Jackie Fine Arts to the taxpayers before the first acquisitions were totally unsupported in fact and the only thing they bought were tax losses.

Finally, as we affirm the tax court's determination that the Picasso package transaction was devoid of economic substance, the tax court was correct in holding the taxpayers liable for additional interest under § 6621(d).

For the reasons stated above, we affirm the judgment of the tax court.