HARRY D. MANDELBAUM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mandelbaum v. Commissioner
Docket Nos. 31027-87, 17858-88
United States Tax Court
T.C. Memo 1990-223; 1990 Tax Ct. Memo LEXIS 257; 59 T.C.M. (CCH) 516; T.C.M. (RIA) 90223; May 7, 1990, Filed *257 Decision will be entered under Rule 155 in docket No. 31027-87. Decision will be entered for the respondent in docket No. 17858-88. Gene Frederick Drake, for the petitioner. William S. Garofalo, Susan T. Becker, and Dawn Marie Krause, for the respondent. COHEN, Judge. COHEN
*738 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Docket No. 31027-87
Additions to Tax
Year
Deficiency
Sec. 6653(a)
1977
$ 25,915.03
$ 1,060.60
1978
24,307.29 1,215.36
1979
21,482.04 1,074.10
1980
20,407.26 1,020.36
Docket No. 17858-88
Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)
6653(a)(1)
6653(a)(2)
6659
6661
1983
$ 5,873
$ 1,104
$ 552
*
$ 1,494
$ 224
1984
5,240  309
615  * 1,320
162  *739 After concessions, the issues for decision are whether petitioner is entitled to deductions and an investment tax credit arising out of a transaction with Jackie Fine Arts; whether petitioner is liable for additions to tax and additional interest; and whether petitioner is liable for a penalty under section 6673. Unless otherwise indicated, all section references are to the Internal *258 Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Petitioner resided in Cincinnati, Ohio, at the time his petitions in these consolidated cases were filed. Petitioner attended Xavier University of Ohio, receiving bachelor's and master's degrees in psychology. During the years in issue, he was a certified financial planner whose income was derived from sales of partnership interests and tax shelters. Among other things, petitioner was a salesman for the Jackie Fine Arts tax shelter. During 1978, petitioner received commissions of $ 6,937.50 from Jackie Fine Arts. Jackie Fine Arts (Jackie) was a Florida corporation owned by Herman Finesod (Finesod). From 1978 through 1982, Jackie sold approximately 2,215 "art master" packages to various investors in the United States. In 1978, Jackie used nonrecourse long-term financing for sales of the packages to investors. In 1979 and subsequent years, Jackie used a mixture of nonrecourse and "recourse" long-term financing. The packages sold by Jackie generally consisted of copyrights and reproduction rights to images (art masters). In the *259 case of living artists, Jackie generally acquired the copyrights and reproduction rights through a standard Option Purchase and a Security Agreement with the artist. Each agreement set forth the number of packages covered and the purchase price, payable by cash and a long-term nonrecourse note. The cash payment usually approximated $ 3,000. The note was secured by Jackie's security interest to be obtained from the ultimate purchaser. Jackie would then resell the packages to investors, agreeing to have the image reproduced as a limited edition for an extra fee. Investors who purchased the Jackie packages were generally provided with biographies of the artists, tear sheets, an information memorandum, a list of potential distributors, and a list of ancillary products that might be produced from the art master. The investors were also provided with two appraisal letters valuing the art masters, a letter representing that the art master had been placed in service, limited edition prints, and a set of plates. Jackie provided petitioner with an information memorandum dated October 1979. Forty of the 52 pages in that memorandum were devoted solely to tax considerations. The memorandum *260 represented that purchase of a Jackie art master would produce $ 4 in tax savings for every $ 1 invested. On or about December 26, 1979, petitioner entered into a Purchase and Security Agreement with Jackie relating to the image "Water Carrier" by Chaim Goldberg. The agreement specified a purchase price of $ 185,000 for the art master, $ 1,000 for the copyright, and $ 3,500 for a limited edition of 300 prints. The agreement further specified a $ 4,000 cash down payment; an $ 8,250 note due June 1, 1980; a $ 49,000 non-negotiable note due January 15, 1991; and a $ 124,750 non-negotiable nonrecourse note due January 15, 1991. Petitioner gave Jackie two checks totaling $ 7,500, representing the down payment and the cost of production of the limited edition. In relation to his transaction with Jackie, petitioner visited art galleries and museums and spoke with employees and associates of Jackie. He discussed the Water Carrier image with a representative of a greeting card company, but that representative indicated that the company would not be interested in the image. Petitioner also met with Ron Parker, the president of Fine Art Acquisitions, a company that focused on tax shelter *261 art, and with appraisers recommended by Finesod. Petitioner did not receive written appraisals of the image prior to his purchase and did not receive appraisals from the persons he spoke to before purchasing. He received appraisals dated April 21, 1980, executed by John P. Banning, Jr. (Banning), and April 22, 1980, executed by Jason Bloom (Bloom). Banning appraised Water Carrier at $ 190,000, and Bloom appraised Water Carrier at $ 195,000. Neither appraisal projected income to be derived from the package or otherwise justified the amount set forth as fair market value of the image. Petitioner entered into the transaction with Jackie with the knowledge and belief that the values claimed by Jackie were, in his words, "vastly overblown" and that the investment was "a dog." *740 On his 1979 tax return, petitioner claimed depreciation expense of $ 20,444, interest of $ 262, and an investment tax credit of $ 17,000 relating to the package. On his 1980 tax return, petitioner claimed depreciation of $ 33,235 and distribution costs of $ 4,000 relating to the package. On his 1981, 1982, and 1983 tax returns, petitioner claimed depreciation deductions of $ 25,849, $ 20,105, and $ 15,637, respectively, *262 relating to the package. Petitioner never reported any receipts from the sale of products bearing the Water Carrier image. Petitioner did not make any of the deferred payments on the purchase price for the Jackie package. In 1989, petitioner attempted to return products bearing the image to satisfy his $ 49,000 note. He was told that he should forget about the note because Jackie was out of business and had forgotten about it. As of the date of petitioner's transaction with Jackie, sales of limited edition prints of the Water Carrier image over a 5-year period would not reasonably be expected to exceed $ 6,500, which would be less than direct out-of-pocket expenses incurred for production, agents' fees, and other expenses. Use of the image on ancillary products was not economically feasible. ULTIMATE FINDINGS OF FACT Petitioner's acquisition of an art master package from Jackie in 1979 was motivated primarily, if not exclusively, by tax considerations. There was no reasonable possibility that items produced from the package would generate sales sufficient for petitioner to recoup his cash investment. Petitioner was relying on recovering his cash investment by immediate tax deductions *263 and credits. Petitioner's transaction with Jackie had no practicable economic effect other than the creation of income tax losses. OPINION Procedural History
The substance of the art master packages sold by Jackie was thoroughly analyzed by us in Rose v. Commissioner, 88 T.C. 386 (1987), affd. 868 F.2d 851 (6th Cir. 1989). A case factually similar to this one, in that the taxpayer was a salesman for Jackie, was considered in Ballard v. Commissioner, T.C. Memo. 1988-436, filed September 14, 1988. In both of those cases, we concluded that the Jackie transactions lacked economic substance and did not support any deductions or investment tax credit. Moreover, we found that the taxpayers were liable for additional interest on tax-motivated transactions under former section 6621(d). After our opinion was affirmed by the Court of Appeals for the Sixth Circuit in Rose v. Commissioner, supra, in then pending Jackie cases, we issued orders intended to facilitate closing of such cases as soon as possible, noting the likelihood that interest was continuing to accrue at the increased rate formerly set by section 6621(d). In the instant cases, our order served March 15, 1989, included the following: *264 ORDERED: That on or before June 12, 1989, the parties shall, jointly or separately, submit to the Court one of the following: (a) If the case is to be settled, their computations for decision and proposed decision reflecting the terms of the settlement; or (b) if any part of the case is to be tried, a statement of the issues to be tried; a list identifying all witnesses to be called by name, address, and brief summary of anticipated testimony; a brief summary of the legal authorities on which the parties rely; and an estimate of the time required for trial. If the issues to be tried include adjustments relating to a transaction with Jackie Fine Arts, petitioner's statement shall also include a detailed explanation of how petitioner contends that his case is distinguishable from Rose v. Commissioner , 88 T.C. 386 (1987), affd. F.2d (6th Cir., Feb. 27, 1989), and Ballard v. Commissioner, T.C. Memo. 1988-436. Petitioner failed to respond to our order by the time set for response. Respondent's response to the Court's order reported that petitioner had rejected respondent's settlement offer on April 17, 1989. On June 19, 1989, the Court issued an Order to Show Cause directing that on *265 or before July 12, 1989, petitioner show cause why these cases should not be dismissed for failure to comply with the Court's order of March 15, 1989. On June 23, 1989, petitioner's response to the Court's order dated March 15, 1989, was filed. Petitioner's response attached a witness list naming Finesod; Harris Shapiro, president of Fine Art Acquisitions; Marilyn Goldberg, president of Marigold Enterprises, Ltd.; Chaim Goldberg, the artist; Robert Shaftan, an attorney-at-law originally hired by Jackie to represent investors; Jason Bloom; and John P. Banning, Jr. All of the named witnesses except the artist were listed at New York City addresses. On July 10, 1989, petitioner's supplemental response to the Court's March 15, 1989, order was filed. That response mentioned several other potential witnesses. The cases were set for trial in New York City on September 25, 1989. Among other things, the Court ordered that on or before September 8, 1989, the parties serve on each other and lodge with the Court their trial memoranda, setting forth the name, address, and a brief summary of *741 the expected testimony of each witness to be called at trial, along with a brief synopsis of the legal *266 authorities upon which each party relies. Petitioner's trial memorandum set forth several issues other than adjustments arising out of his transaction with Jackie. Therefore, at the time of trial, an attorney for respondent who had traveled from Cleveland, Ohio, was present to deal with the other issues. Petitioner then conceded all other issues, making such travel by one of respondent's counsel unnecessary. At trial, no witnesses other than petitioner were called on his behalf. Petitioner presented no evidence of fair market value or economic feasibility of the package purchased by him from Jackie. Respondent presented the expert testimony of Robert Brown, who had prepared a detailed report to support his conclusion that sales of prints and other products bearing the image Water Carrier could not be expected to exceed expenses incurred in such sales. At the conclusion of trial, the parties were ordered to file seriatim briefs, with petitioner to file the first brief. Neither petitioner's opening brief nor his reply brief complied with Rule 151, although respondent's intervening brief pointed out petitioner's failure to comply with that rule. In his brief, respondent requests *267 an award under section 6673. Respondent suggests that such award should be made under the 1989 revisions to section 6673, which increased the maximum award to $ 25,000. Pub. L. 101-239, sec. 7731(a), 103 Stat. 2106. Respondent recognizes that the increased amount is applicable to positions maintained after December 31, 1989, but relies on petitioner's continuing to maintain his position after that date. Deficiencies, Additions to Tax, and Additional Interest
Notwithstanding pre-trial discovery, respondent was surprised at trial when for the first time petitioner claimed that he acquired an art master package from Jackie so that he could induce Finesod to allow him to participate in sales of coal tax shelters in West Virginia. Petitioner asserts, without any supporting evidence, that such coal shelter ventures were successful. Although petitioner's tax returns for 1977 through 1984 are in the record, there is no verification of petitioner's claims about coal ventures apparent from those tax returns. We are unpersuaded by petitioner's testimony, and, even if true, that testimony would not entitle petitioner to depreciation deductions and investment tax credit claimed on the art *268 master. Petitioner has presented no legal argument, and we know of none, that suggests that deductions originally claimed to relate to an art business could be transferred to an assumed coal business. Petitioner's claims are belated and not credible. In Rose v. Commissioner, 868 F.2d at 853, the Court of Appeals stated: The taxpayers' right to both depreciation deductions under section 167(a) and investment tax credits under section 48(a)(1) is contingent upon showing that their activities constituted either a "trade or business" or were undertaken and carried on "for the production of income." Bishop v. Commissioner, 342 F.2d 757, 759 (6th Cir. 1965). [Fn. ref. omitted.] Petitioner's testimony at trial failed to give us any basis for finding that his activities during the years in issue with respect to the Jackie package were a business or were undertaken for the production of income. Although petitioner represented that he would call witnesses relating to the investment, he called none. He testified to some incredible expectations and claimed that he had made a business plan. That plan, however, was not produced at trial and had not been produced to respondent during discovery. *269 Respondent's expert's testimony, by contrast, proved the lack of sales or profit potential of petitioner's package. The stipulations and exhibits received in evidence establish that petitioner's transaction with Jackie is indistinguishable from those entered into by the taxpayers in Rose v. Commissioner, supra, and Ballard v. Commissioner, supra. Petitioner has presented no evidence that this case should be determined any differently than Rose or Ballard. He has not even addressed the facts in this case, including his admission that the package was greatly overvalued. He has ignored the tax benefits promised and claimed and the other facts discussed as persuasive in our prior opinions. We can only conclude that petitioner's transaction was also without any practicable economic effect other than the creation of income tax losses. See Rose v. Commissioner, 868 F.2d at 853. Similarly, petitioner has given us no reason not to sustain the additions to tax determined by respondent and the additional interest applicable to tax-motivated transactions under former section 6621(d). Section 6673
Section 6673 directs the Court to make an award to the United States if it appears that proceedings *270 have been instituted or maintained primarily for delay or if the taxpayer's position in such a proceeding is frivolous or groundless. (Other provisions of that section are not pertinent here.) Respondent argues that an award should be made under section 6673 because of petitioner's *742 belated concessions of other issues, recently "concocted" claim of business purpose for his transaction with Jackie, failure to comply with the Court's rules, and failure to present a meritorious case. Respondent quotes from the legislative history of the 1989 revisions to section 6673, which restated the grounds for an award and increased the maximum amount to $ 25,000, as follows: The committee intends that the increased penalty (above $ 5,000) apply primarily (but not exclusively) to tax shelter cases, where the $ 5,000 maximum provided under present law appears to be ineffective in deterring taxpayers from taking frivolous positions. [H. Rept. No. 101-247 (1989), to accompany H.R. 3299 (Pub. L. 101-239, 103 Stat. 2106, 2400-2401).] On consideration of the entire record, we conclude that petitioner has maintained these proceedings primarily for delay and that his position is frivolous and groundless. *271 He has imposed on respondent and on the Court, and an award to the United States is justified. See Horn v. Commissioner, 90 T.C. 908, 945-947 (1988). The claims and omissions in a single brief filed after December 31, 1989, do not persuade us to make an award in excess of $ 5,000 in each docket, although we would be inclined to do so if the trial of these cases had taken place after that date. We therefore award $ 5,000 in each docket, for a total of $ 10,000. Decision will be entered under Rule 155 in docket No. 31027-87. Decision will be entered for the respondent in docket No. 17858-88.
Footnotes
*. 50 percent of the interest on $ 5,873 for 1983 and on $ 5,240 for 1984.↩