908 F.2d 975
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
John W. APPERSON and Virginia Apperson, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 88-1550.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 28, 1990.*
Decided July 9, 1990.
 
 Before RICHARD A. POSNER, DANIEL A. MANION and MICHAEL S. KANNE, Circuit Judges.
 
 ORDER
 BACKGROUND
 
 1
 John and Virginia Apperson ("the Appersons") are residents of Granite City, Illinois. In 1982, on the advice of their tax return preparer, they entered into an agreement with American Educational Leasing (AEL) to lease a "master recording" of an audio tape of the classic childrens' story "The Snow Queen" by Hans Christian Anderson. The terms of this lease included an initial "rental payment" of $9,500.00 (apparently the one and only rental payment under the 7 year lease), after which AEL would produce an audio master tape of the selected public domain story of approximately 30 minutes in length. Although AEL did not market the recording, they "recommended" various record and tape distributors who would guarantee (for an additional $1,500.00 fee) to manufacture and distribute the audio master tape for the lessee.
 
 
 2
 John Apperson, a police officer, and Virginia Apperson, a grocery store checker, apparently had no particular expertise in either the childrens' classics or the fast-paced recording industry. The record before us further indicates that the Apperson's diverse business interests included a professional magic act and a small manufacturing concern which produced specialty magic devices. Despite their eclectic talents, after receiving tax deficiency notices for the years 1981 and 1982, the Appersons had little success in making the I.R.S. disappear. They appeal the decision of the Tax Court which found that their transactions lacked the required profit motive and economic substance, and hence disallowed their investment tax credit[1] and certain deductions for tax year 1982.
 
 STANDARD OF REVIEW
 
 3
 We review the factual determinations of the Tax Court using a "clearly erroneous" standard, Hough v. CIR, 882 F.2d 1271, 1275 (7th Cir.1989), and review legal determinations de novo. Heffley v. CIR, 884 F.2d 279, 282 (7th Cir.1989).
 
 ANALYSIS
 
 4
 26 U.S.C. Sec. 162 of the Internal Revenue Code allows deductions for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." There must, however, be a dominant "profit motive" in carrying on the business; the central focus of the business must not be the tax benefits it might generate for the taxpayer. United States v. American Bar Endowment, 477 U.S. 105, 110 (1986). In a similar manner, 26 U.S.C. Sec. 48(a)(1) limits an investment tax credit to property used in a "trade or business" or held by the taxpayer for "the production of income," referencing the depreciable property standard allowed by 26 U.S.C. Sec. 167. We agree with the Eleventh Circuit's "profit margin test" analysis in Brannen v. CIR, 722 F.2d 695 (11th Cir.1984); it appears that a threshold inquiry of an investor's "profit motive" should be a prerequisite for a deductibility determination under both Sec. 162 and Sec. 167.[2]
 
 
 5
 The Tax Court found that the Apperson's received two brochures from AEL prior to entering into the lease agreement (Tax Court Decision at 9-13). Although the brochures highlighted potential revenues from the investment, the Tax Court found that their primary focus were the tax benefits to the potential investor. (Id. at 11).
 
 
 6
 Prior to their investment decision, the Appersons never actually heard the completed master recording; in reality, it was the practice of the producers not to begin production until the investor's check was tendered. (Id. at 19 and 14, respectively). The production process of "The Snow Queen" and other tapes used as investment vehicles for AEL's clients was apparently not an elaborate affair. (Id. at 17-19). The recordings were actually produced by International Horizons Audio Recordings, Inc. (IHI), pursuant to an agreement between AEL and IHI which called for AEL to pay $1,000.00 to IHI in cash prior to initiating production. (Id. at 13). AEL also delivered a form promissory note to IHI in the amount of $185,000.00. This promissory note purportedly formed the basis for the investment tax credit; it had no actual relationship to the fair market value of the master recording, which the Tax Court found to have a production cost of not more than $300.00. (Id. at 27). The note was apparently not intended to be repaid (Id. at 28-29).
 
 
 7
 Before receiving a tax deficiency notice, the Appersons collected investment income from sales of "The Snow Queen" totaling $1.70. (Doc. 13 at 19). Despite this paltry return on their investment, the Apperson's apparently did little or nothing to precipitate a flurry of marketing activity which might have garnered more substantial earnings. (Tax Court Opinion at 19).
 
 
 8
 To counter the Tax Court's determination that they lacked the necessary profit motive, the Appersons argue on appeal that since they were unskilled in both the recording industry and financial matters, they relied on the business expertise of experienced professionals. The Appersons cite Roe v. Commissioner, 52 T.C.M. (CCH) 778 (1986), in an attempt to show that passive investors can possess the requisite profit motive. Here, however, the Tax Court found that the primary focus of the Apperson's investment was the tax savings, not potential profit. The economic substance analysis of Rose v. CIR, 88 T.C. 386 (1987), used by the Tax Court in this case, was later affirmed by the Sixth Circuit. Rose v. CIR, 868 F.2d 851 (6th Cir 1989) (investment tax credits on reproduction masters of Picasso originals disallowed because the venture was completely void of economic substance other than tax benefits). We agree with the Sixth Circuit's analysis in Rose.
 
 CONCLUSION
 
 9
 The Tax Court was correct in determining the Appersons master recording leasing venture of "The Snow Queen" lacked economic substance; in fact, it was a sham. As we find Petitioner-Appellants remaining arguments on appeal to be without merit, we need not address them here. The decision of the Tax Court is
 
 
 10
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). Petitioner-appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 The Tax Reform Act Of 1986, Pub.L. No. 99-514, 100 Stat. 2085, and subsequent amendments to the Internal Revenue Code postdate the events that are the subject of this case. Therefore, our decision is made pursuant to the Internal Revenue Code of 1954 (26 U.S.C. Sec. 162 et. seq.), with the exception of the jurisdictional aspects which encompass this court's authority to review decisions of the Tax Court. The Appersons notice of appeal from the Tax Court was filed on March 9, 1988, pursuant to the Internal Revenue Code of 1986 (26 U.S.C. Sec. 7483)
 
 
 [2]
 See 26 U.S.C. Sec. 183 of the Tax Reform Act of 1969, Pub.L. No. 91-172, 83 Stat, Sec. 213 and Brannen v. CIR, 722 F.2d at 704