JOHN S. EVANS and SUE A. EVANS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Evans v. Commissioner
Docket No. 9072-86
United States Tax Court
T.C. Memo 1991-272; 1991 Tax Ct. Memo LEXIS 315; 61 T.C.M. (CCH) 2917; T.C.M. (RIA) 91272; June 13, 1991, Filed *315 Decision will be entered under Rule 155. Walter J. Rockler and Richard L. Hubbard, for the petitioners. Elizabeth P. Flores, for the respondent. TANNENWALD, Judge. TANNENWALD
SUPPLEMENTAL MEMORANDUM OPINION The present proceeding is a result of the reversal by the Court of Appeals for the Eighth Circuit (908 F.2d 369 (8th Cir. 1990)) of our prior opinion in Evans v. Commissioner, T.C. Memo 1988-468. After concessions, the issues remaining for decision are: (1) Whether the underlying transactions had economic substance; (2) whether the partnership acquired ownership of, or lesser rights in, the film "Heartbeat"; (3) whether, in calculating allowable depreciation, the basis of the film or lesser rights should include recourse and nonrecourse purchase notes; (4) whether petitioner is considered "at risk" within the meaning of section 465 [1] as to the nonrecourse purchase note and the nonrecourse marketing loan; (5) whether the partnership *316 is entitled to the claimed investment tax credit; (6) whether the advertising and marketing expenses and distribution fees were properly deducted by the partnership; (7) whether the guaranteed payments to the general partners, professional fees, and other miscellaneous payments represent nondeductible expenditures; and (8) whether petitioner is liable for increased interest under section 6621(c), formerly 6621(d), in respect of tax-motivated transactions. The issues are subsumed within the issues set forth in footnote 20 of our Memorandum Opinion herein.
At the outset, we note that our disposition of the instant case, at this point in time, is circumscribed by: (1) The opinion of the Court of Appeals for the Eighth Circuit in reversing our prior disposition of the case; (2) our earlier findings of fact, *317 except for our ultimate determination in respect of the existence of the requisite profit objective; and (3) the decision and opinion by the same Court of Appeals, subsequent to the reversal herein, in Upham v. Commissioner, 923 F.2d 1328 (8th Cir. 1991), affg. T.C. Memo 1989-253, which involved substantially identical factual elements in connection with acquisition/distribution arrangements in respect of a motion picture film between Orion and a partnership including Daniel Glass who was also a general partner therein, [2] and the application of Golsen v. Commissioner, 54 T.C. 742, 756-758 (1970), affd. on other grounds 445 F.2d 985 (10th Cir. 1971). *318 We deal first with respondent's assertion that the acquisition/distribution arrangements lacked economic substance. In McCrary v. Commissioner, 92 T.C. 827, 845 (1989), we stated: A transaction devoid of economic substance is not recognized for tax purposes. Frank Lyon Co. v. United States, 435 U.S. 561, 573, 55 L. Ed. 2d 550, 98 S. Ct. 1291 (1978); Knetsch v. United States, 364 U.S. 361, 366, 5 L. Ed. 2d 128, 81 S. Ct. 132 (1960); Cherin v. Commissioner, 89 T.C. 986, 992-994 (1987), on appeal (11th Cir., Sept. 15, 1988). A taxpayer's subjective intent, however, is a factor to be considered in determining whether the transaction had economic substance. See Sochin v. Commissioner, 843 F.2d 351, 353-354 (9th Cir. 1988), affg. Brown v. Commissioner, 85 T.C. 968 (1985); Cherin v. Commissioner, 89 T.C. at 992 n.13. Petitioners are correct that Rose did not dispense with the subjective profit objective test. See Rose v. Commissioner, supra.Implicit in Rose, however, is the conclusion that a transaction that is found to lack economic substance under the approach there adopted *319 is one in which objective factors preclude finding that the taxpayer had an actual and honest profit objective. A transaction that has a business purpose or profit objective will survive the Rose analysis of economic substance. Rose simply reformulated a two-pronged test into a unified approach in certain types of cases. * * * [Emphasis added.]
We think the necessary corollary of the holding of the Court of Appeals that the requisite profit objective existed herein is that the acquisition/distribution arrangements had economic substance. See also Jacobson v. Commissioner, 915 F.2d 832, 837-838 (2d Cir. 1990), affg. in part and revg. in part a Memorandum Opinion of this Court, wherein the Court of Appeals for the Second Circuit, in reversing us on the issue of the existence of the requisite profit objective, pointed to the unified test of profit objective and economic substance which we had articulated in Smith v. Commissioner, 91 T.C. 733, 753-754 (1988), affd. sub nom. Karr v. Commissioner, 924 F.2d 1018 (11th Cir. 1991). [3]
*320 Respondent asserts that Cherin v. Commissioner, 89 T.C. 986, 993 (1987), requires a two-prong test, namely the absence of solely tax avoidance motives and the presence of independent economic substance. We disagree. Cherin does no more than articulate the proposition that the presence of a subjective profit objective does not dispense with the necessity of also meeting the economic substance test. The two-prong test, suggested by respondent, has no application where, as is the case herein, the finding of a profit objective rests upon a foundation of objective factors. See Casebeer v. Commissioner, 909 F.2d 1360, 1363 (9th Cir. 1990); Rose v. Commissioner, 88 T.C. 386, 414 (1987), affd. 868 F.2d 851 (6th Cir. 1989); Estate of Thomas v. Commissioner, 84 T.C. 412, 438-439 (1985) ("We have found * * * that a profit was reasonably likely so that the economic substance test has been fairly met."). Nothing in Jacobson v. Commissioner, supra, requires a different analysis. In that case, the Court of Appeals for the Second Circuit did not, as the Court of Appeals *321 did in this case, hold that the requisite profit objective existed. Rather, it concluded that we had applied an improper standard in determining that such a profit objective did not exist and remanded the case for our further review of that issue as well as others. We hold that the acquisition/distribution arrangements herein had economic substance and turn to a consideration of the nature of the partnership's interest thereunder and the extent to which the partnership and hence petitioners are entitled to various deductions and credits in respect thereof. The threshold question is whether the partnership acquired ownership of the film "Heartbeat" for tax purposes. This is a factual issue to be determined by reference to the written agreements read in light of the attendant facts and circumstances. See Durkin v. Commissioner, 87 T.C. 1329, 1367 (1986), affd. 872 F.2d 1271 (7th Cir. 1989). Respondent has the burden of proof as to this issue since it was raised in his amended answer. See Rule 142(a). "For tax purposes, a sale of a motion picture occurs when there is a transfer of all substantial rights of value in the motion picture copyright. *322 [Citation omitted.] No sale occurs if the transferor retains substantial proprietary rights in the motion picture." Durkin v. Commissioner, 87 T.C. at 1369. Our findings of fact, as reflected in our prior opinion in this case, show that numerous rights were excepted from the sale of "Heartbeat" to the partnership, i.e., Orion's rights in the underlying literary, dramatic and musical material on which "Heartbeat" was based, and the copyrights thereto, television series and special rights, remake or sequel rights, ancillary rights (such as theatrical stage rights), the right to enter into agreements with respect to the underlying literary and musical material and option rights with respect to persons who had rendered services while producing the film. Furthermore, as those findings of fact show, under the distribution agreement, the partnership granted Orion all advertising, distribution, exhibition, and exploitation rights in the film in perpetuity. Although Orion agreed to consult the partnership regarding certain matters, in particular the initial advertising campaign, release date and marketing strategy, Orion's decisions as to these matters were to be final. *323 Further, under the distribution agreement, the partnership was required to deliver to Orion a laboratory access letter. Under this letter, Orion had exclusive access to the material that was in the laboratory, including, among other things, the original film negative and sound negative. Finally, our prior findings of fact further reflect the facts that Orion agreed that it was holding the partnership's copyright interest in the film in trust where the copyright notice was in Orion's name and that the copyright notice on the movie was to read "Copyright * * * Orion Pictures Company 'All Rights Reserved.'" Similarly, in advertising and publicity, "Heartbeat" was to be characterized as "An Orion Pictures Release Through Warner Bros., a Warner Communications Company." Petitioners assert that the finding of the Court of Appeals that "the distribution arrangements for 'Heartbeat' [were] in conformance with industry standards, except that Orion's fees were lower than the prevailing fees in the industry" (908 F.2d at 374) requires the conclusion that the partnership acquired ownership in the film. Such an assertion is without merit. The characterization of "industry *324 standards" was made in the context of the determination that the partnership had the requisite profit objective and therefore economic substance. It clearly did not describe the legal nature of the rights falling within such categorization. Indeed, any such reading of the opinion of the Court of Appeals in this case would be at odds with the holding by the same court in its subsequent decision in Upham v. Commissioner, 923 F.2d at 1334, that the acquisition/distribution arrangements therein, which were substantially identical to the arrangements involved herein, transferred only a contractual right to share in profits and not ownership rights in the film in question. Based on the evidence presented herein, we conclude that respondent has carried his burden of proof that the partnership did not receive the rights necessary to constitute it the owner of the film. Rather, we hold, as the Court of Appeals did in Upham, that the partnership acquired a contractual right to share in the proceeds of "Heartbeat" while Orion retained ownership of the film. The intangible contractual right to share in the film's profits is a depreciable asset. Upham v. Commissioner, 923 F.2d at 1335; *325 Tolwinsky v Commissioner, 86 T.C. 1009, 1052-53 (1986). Consequently, we turn to the issue of the amount of the partnership's basis for such depreciation. Petitioners contend that the amount of such basis is the full contract price of $ 4,420,000 (comprised of $ 300,000 cash, the $ 2,000,000 recourse purchase note, and the $ 2,120,000 nonrecourse purchase note). Respondent asserts that the nonrecourse purchase note should be excluded from basis because the purchase price or amount of the note unreasonably exceeded the value of the property and that the recourse purchase note (which we previously determined constituted genuine debt) should likewise be excluded because the purchase price beyond the $ 300,000 cash payment greatly exceeded the fair market value of the contractual right to proceeds. We deal with these conflicting views within a narrow frame of reference highlighted by the Eighth Circuit's articulation of its ultimate view that we erroneously determined "that the partners could not have had a bona fide belief that Heartbeat would realize sufficient gross receipts to produce a profit * * *." 908 F.2d at 374. Although footnote *326 11, which was appended to this statement, suggested that it was unclear what amount of the gross receipts would be necessary for the partners to recoup their investment, the Court of Appeals appears to have concluded that, at least as to some partners, only $ 8 million in gross receipts would have been required -- an amount far less than the $ 28.5 million which we had considered the "break-even" point. The ultimate view thus expressed was reinforced by reference to our finding of fact that the $ 4,420,000 total price did not exceed the film's production costs, an element which has been held to be a "reliable indicator of fair market value." Vandenhoff v. Commissioner, T.C. Memo 1987-116, 1987 T.C. Memo 116, 53 T.C.M. (CCH) 271, 282, T.C.M. (RIA) 87116 at page 87-605, citing Siegel v. Commissioner, 78 T.C. 659, 687-688 (1982). Additionally, the Eighth Circuit emphasized as an element leading to its ultimate conclusion of an erroneous determination on our part "the opportunity for Heartbeat Associates to earn a substantial ultimate profit" (908 F.2d at 374) -- a result which could not obtain until both the purchase *327 notes had been fully paid. We recognize that the existence of a profit objective does not necessarily preclude a conclusion that such part of a purchase price as is represented by recourse as well as nonrecourse obligations may not be supported by the fair market value of the asset involved. See Taube v. Commissioner, 88 T.C. 464, 487-489 (1987). Nevertheless, we observed in Taube that the "analysis * * * in connection with the profit objective issue * * * substantially disposes of the fair market value issue." See 88 T.C. at 488-489. Applying this principle to the analysis and conclusion of the Court of Appeals herein leads us to hold that the total price of $ 4,420,000 should be included in the basis for depreciation. Our view as to the impact of the analysis and conclusion of the Court of Appeals would also apply to the inclusion of the amounts of the advertising and marketing fees. See our discussion of the expense versus capitalization issue in respect of the advertising expenditure and marketing loan proceeds, infra pages 15-17. One further observation. The partnership used a 4-year life in its depreciation calculation (which *328 respondent has not disputed) and the double declining balance method, which respondent correctly points out is not available to the partnership if we hold, as we do, that the asset was an intangible property, i.e., a contract right, rather than the film itself. See sec. 167(c); Law v. Commissioner, 86 T.C. 1065, 1103-1104 (1986). It does not follow, however, that because the partnership's depreciable basis includes the nonrecourse purchase note, it should be considered "at risk" as to that note or the nonrecourse marketing note for the purpose of determining the limitation on the amount of the loss from "Heartbeat" deductible under section 465. [4] *329 Clearly, the inclusion of these two items in the amount considered at risk is precluded by section 465(b)(4), [5] and petitioners have recognized this result by conceding that "nonrecourse loans are not 'at risk' amounts." [6]
*330 We now turn to the question of the availability of the investment tax credit. Section 48(k) allows for an investment tax credit with respect to any new section 38 qualified film to the extent of the taxpayers's ownership in the film. [7] Our holding that the partnership had only an intangible contract right to share in the profits from "Heartbeat" precludes it from qualifying as the owner of the film for purposes of the investment credit since such a contract right, in and of itself, does not constitute property within the meaning of section 48. Upham v. Commissioner, supra. At no time have petitioners contended that, even if we held that they had only a contract right in the profits from the film, they still qualified as a lender or guarantor under section 1.48-8(a)(4)(iii), Income Tax Regs. See Durkin v. Commissioner, 87 T.C. at 1383-1385. We turn next to the question of the proper treatment of the *331 $ 450,000 advertising expense and the $ 800,000 marketing strategy fee. Respondent contends that these amounts were merely a means whereby Orion received interest-free loans to finance the costs of the film, that the deductions in respect thereof were an attempt to convert part of the cash purchase price into a currently deductible expense when in actuality such amounts should have been capitalized, and that these expenses were those of the distributor, Orion, and not the partnership. As our prior findings of fact show, the partnership obtained three loans from Chemical Bank of New York (Chemical Bank), including a $ 550,000 nonrecourse marketing loan, a $ 237,500 initial principal and $ 400,000 maximum principal recourse marketing loan, and a $ 300,000 initial and $ 540,000 maximum principal additional recourse financing loan, to pay for these expenditures and other items. We held that the recourse marketing loan and the recourse additional financing loan were genuine debt and that the fact that some of the interest payments which were made on these loans were made by Orion did not alter this conclusion, given the fact that the partnership included these amounts paid by Orion in *332 its income. Similarly, we held that the nonrecourse marketing loan was not contingent, speculative, or in substance an obligation of Orion and was an actual transfer of cash by a third party, rather than a note taken by the seller as part of the putative purchase price. We also held that Orion's obligation to lend the amount of the interest payments to the partnership did not make the loan Orion's obligation. We also noted that, as with the recourse notes, the partnership included in income all interest payments made by Orion. These findings and conclusions were left undisturbed by the Court of Appeals. However, they were articulated in the context of deciding whether the obligations involved constitute genuine debts of the partnership for the purpose of determining the availability of a deduction for the interest thereon. They do not, in our opinion, dispose of the question of the proper tax treatment of the use of the proceeds of such borrowings, which is the issue now before us. In Upham v. Commissioner, T.C. Memo 1989-253, affd. 923 F.2d 1328 (1991), this Court held that the amounts of the claimed deductions for advertising and marketing *333 fee expenditures constituted capital expenditures, and our conclusions were approved by the Court of Appeals for the Eighth Circuit. We are not persuaded that the situation herein is sufficiently distinguishable from that involved in Upham so as to cause us to reach a different conclusion. See also Durkin v. Commissioner, 87 T.C. at 1390-1392. Accordingly, we sustain respondent's disallowance of the two deductions and hold that the amounts should be treated as capital expenditures of the partnership in acquiring the intangible contractual right to share in the proceeds of the film. We next address the deductibility of the following partnership expenditures during 1980: Expenses
Amount
Guaranteed Payments to Partners
$ 85,000
Professional Fees
63,154
Printing
1,541
Messenger
1,169
Bank Service Charges
53
Miscellaneous Office
4,617
Payments allocable to organizational and syndication fees of a partnership must be capitalized. Organization costs, if the taxpayer elects, are amortizable over a 60-month period, but syndication costs are not amortizable. See secs. 263, 709. Organizational expenses are expenditures which are incident to the *334 creation of the partnership, are chargeable to capital account, and are of a character which, if expended incident to the creation of a partnership having an ascertainable life, would be amortizable over such life. Sec. 709(b)(2). The $ 60,000 payment to Mr. Malamed was in consideration for his services in finding "Heartbeat," negotiating its purchase and distribution with Orion and Warner, preparing the various partnership documents and loan agreements, and managing the partnership. The $ 25,000 payment to Mr. Glass was in consideration for his services in negotiating the purchase and distribution of the film and for managing the activities of the partnership. These expenditures are properly characterized as organizational costs which are not currently deductible [8] or nondeductible syndication fees. We do not share petitioners' view that the deductibility of the $ 85,000 guaranteed payments is supported by the fact that the partnership capitalized and did not deduct $ 151,387.93 of syndication fees. We likewise hold that the $ 63,154 legal fees represent nondeductible organizational or syndication fees. Diamond v. Commissioner, 92 T.C. 423, 444-446 (1989), *335 affd. on another issue 930 F.2d 372 (4th Cir. 1991); Durkin v. Commissioner, 87 T.C. at 1388-1390. We are unable to accede to petitioners' plea that we make an allocation of a portion of these items, as well as the remaining smaller items, to deductible expenses. The record herein simply does not provide a sufficient basis for our so doing. See Diamond v. Commissioner, supra; Durkin v. Commissioner, supra; Wildman v. Commissioner, 78 T.C. 943, 957-963 (1982). Finally, we address respondent's assertion in his amended answer that petitioners are liable under section 6621(c) for interest on an underpayment at the rate of 120 percent of the statutory rate. During the years in issue, this section provided that increased interest would be due if a "substantial underpayment" (that is an underpayment of more than $ 1,000) is attributable *336 to a "tax motivated transaction." Certain transactions are defined to be "tax motivated" by section 6621(c)(3). To the extent that our conclusions herein are based upon the application of section 465(a) and the disallowance of deductions which should have been properly treated as organization or syndication expenditures, we hold that respondent has carried his burden of proof and that the increased interest rate will come into play if the amount of the underpayment exceeds $ 1,000. Sec. 6621(c)(3)(A)(ii) and (iv); sec. 301.6621-2T, Q & A-3(4), Temporary Proced. and Admin. Regs., 49 Fed. Reg. 50391 (Dec. 28, 1984); Diamond v. Commissioner, 92 T.C. at 447-448. To reflect the foregoing, Decision will be entered under Rule 155. [9]
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The same situation exists in Jacobson v. Commissioner, 915 F.2d 832 (2d Cir. 1990), affg. in part and revg. in part T.C. Memo 1988-341. See also Brown v. Commissioner, T.C. Memo 1988-527, affd. without published opinion (9th Cir., Nov. 13, 1990); Schwartz v. Commissioner, T.C. Memo 1987-381, affd. without published opinion (9th Cir., April 19, 1991); Vandenhoff v. Commissioner, T.C. Memo 1987-116↩. All of these cases involved Mr. Glass as a partner/promoter in respect of a motion picture film but not Orion.
3. In our prior opinion, see T.C. Memo 1988-468 n.23, we observed that an analysis under the usual test of sec. 183 would result in the same outcome as if we were to apply the objective analysis of Rose v. Commissioner, 88 T.C. 386 (1987), affd. 868 F.2d 851↩ (6th Cir. 1989).
4. Respondent has conceded that petitioners are "at risk" within the meaning of sec. 465 as to their pro rata share of the recourse purchase note, recourse marketing loan, and the additional recourse financing loan.↩
5. Sec. 465(b)(4) provided: (4) Exception. -- Notwithstanding any other provision of this section, a taxpayer shall not be considered at risk with respect to amounts protected against loss through nonrecourse financing, guarantees, stop loss agreements, or other similar arrangements.↩
6. Petitioners' concession undermines the suggestion, in their reply brief, that the issues set forth in footnote 20 to our prior opinion did not include the question whether the nonrecourse notes were "at risk" -- a suggestion which, in any event, is without merit. In calculating the amounts "at risk," there may be a duplication of items aggregating $ 29,375. Any adjustment in this regard should be accomplished in the Rule 155 computation. In this connection, we reject petitioners' contention that the "double-counting" issue is not before us. We note that, contrary to petitioners' assertion that this issue was not advanced until respondent's brief on remand, it was in fact raised in respondent's original trial brief herein and that petitioners' position was not advanced in their reply brief on remand and appears to have been an afterthought when the Court asked for their position in an order issued after all briefs on remand had been filed and directed primarily to the "at risk" problem. We also note that because of our holding herein, particularly with respect to the unavailability of the double-declining method of depreciation, the loss limitation under sec. 465 may not come into play.↩
7. The parties do not dispute that "Heartbeat" was a qualified film under sec. 38↩.
8. There is no evidence that the partnership made the required election for amortization.↩
9. Any differences between the parties with respect to the data contained in petitioners' Second Supplemental Statement can be disposed of in connection with the computations under Rule 155.↩