FLOYD R. AND CAROL B. HESTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hester v. Commissioner
Docket Nos. 22288-87, 3005-88
United States Tax Court
T.C. Memo 1992-554; 1992 Tax Ct. Memo LEXIS 568; 64 T.C.M. (CCH) 802; September 21, 1992, Filed *568 An appropriate order will be issued restoring these cases to the general docket for disposition of remaining issues. For Floyd R. Hester, pro se. For Respondent: David W. Sorensen. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases are assigned for trial or other disposition to Special Trial Judge James M. Gussis pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. They are consolidated for trial, briefing, and opinion. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GUSSIS, Special Trial Judge: Respondent determined the following Federal income tax deficiencies, increased interest, and additions to tax: Increased Interest and Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6621(c)
6653(a)
6653(a)(1)
6653(a)(2)
6659
1978
$ 5,487.64
applicable
$ 247.38
--   --
$ 1,646.29
1979
12,501.56
applicable
625.08
--   --
3,750.47
1981
875.70
applicable
--  $ 43.78
50% of the
--   interest due
on $ 875.70
1983
31,262.00
--    --  1,563.00
50% of the
--   interest
due on
$ 31,262.00
1984
1,845.00
--    --  92.00
50% of the
--   interest due
on $ 1,845.00
*569 By motion filed January 31, 1992, respondent requested that the Court impose payment of a penalty to the United States pursuant to section 6673(a)(1). The issues for decision are: (1) Whether petitioners are entitled to deductions for lease payments and investment credits claimed with respect to their master recording lease transaction with Entertainment Marketing Co., Inc. (EMCI); (2) whether petitioners are liable for additions to tax under section 6653(a) for each of the years 1978 and 1979 and under section 6653(a)(1) for 1981, 1983, and 1984; (3) whether petitioners are liable for additions to tax under section 6653(a)(2) for the years 1981, 1983, and 1984; (4) whether petitioners are liable for additions to tax under section 6659 for the years 1978 and 1979; (5) whether the increased rate of interest under section 6621(c) is applicable; and (6) whether petitioners are liable for the penalty imposed by section 6673. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. Petitioners were residents of Durango, Colorado, at the time the petition herein was filed. They timely filed Federal income tax returns for the years in issue. Floyd R. Hester (petitioner) *570 graduated from the United States Air Force Academy and remained with the Air Force as a pilot for approximately 10 years. Mrs. Hester was not employed during the years 1978 through 1984. During the period from 1978 until May 12, 1982, petitioner was employed as a pilot with Braniff International Airlines. In October 1981, petitioner attended a financial planning seminar in Denver conducted by Stuart Felton (Mr. Felton). Approximately 1 week after the seminar petitioners traveled to Houston, Texas, to meet with Mr. Felton. Among the investments discussed at both the seminar and the Houston meeting was EMCI's Educational Audio Cassette Tape Master Lease Program (master lease program). At the Houston meeting Mr. Felton gave petitioners a promotional brochure describing the master lease program. The promotional brochure dealt extensively with the tax benefits to be gained from the EMCI master lease program. Part III of the brochure explained how the master lease program operated: III HOW THE PROGRAM WORKS 1. The Taxpayer-Leaseholder leases an Educational Audio Cassette Master Tape that he will exploit for profit through retail distribution for an 8 year period. 2. The total *571 cost to Taxpayer-Leaseholder is $ 9,500.00 for a single audio cassette master tape. This cost, paid in 1981, is the prepaid rental for the entire term of the lease. This is the full extent of liability for the Taxpayer-Leaseholder. 3. TAX IMPACT: Taxpayer-Leaseholder can take advantage of both the I.T.C. and the rental deduction. 4. There are NO notes for the Taxpayer-Leaseholder to sign. The Lessor, EMC, signs the notes and is at full risk, because it has purchased each master for $ 180,000.00. 5. TAX IMPACT: Taxpayer-Leaseholder will receive in 1981 the Full Investment Tax Credit passed through to him of $ 18,000 for an individual master audio cassette. In a 50% tax bracket, these ITC figures are doubled and the appropriate rental deduction added, which on an audio cassette master gives the Taxpayer-Leaseholder the equivalent of over 4 to 1 write-off for 1981. 6. Additional rental consists of Taxpayer-Leaseholder paying to Lessor 50% of the net proceeds of distribution royalties, up to $ 1.00 per cassette, over the term of the Lease. 7. Taxpayer-Leaseholder must distribute his recording to complete exploitation. Lessor cannot be involved in a distribution, but will *572 recommend to Taxpayer-Leaseholder a distributor who will guarantee to manufacture and distribute your audio cassettes for you. Part V of the brochure was devoted exclusively to a legal opinion on the tax aspects of the leasing program. Part VI contained a legal opinion of the securities laws aspects of the leasing program, and Part VII described the legal defense fund EMCI allegedly established to assist leaseholders in the event of an Internal Revenue Service challenge. In addition, the brochure contained a purported appraisal of the master recording ascribing a value of $ 320,000 to each of EMCI's master recordings in its 1981 audio cassette educational series. Based upon Mr. Felton's personal recommendation and EMCI's promotional brochure, petitioner leased a master recording entitled "The Story of Christmas". On November 15, 1981, petitioner executed a document entitled "Equipment Lease" which stated, among other things, that petitioner was leasing from EMCI for a period of 8 years a master audio cassette tape for use anywhere. The initial payment of $ 9,500 made by petitioner was deemed to be prepaid rental for the full 8-year term of the lease. Petitioner did not listen *573 to the master recording before executing the lease. Petitioner did not designate the artists who made the master recording. Petitioner never asked to review any of EMCI's statistical information to determine whether any prior recordings in prior years had produced a profit. Prior to leasing the master recording petitioner did not attempt to verify the appraisal contained in the brochure. EMCI, as lessor of the master tape, thereupon elected in a document showing a preparation date of December 31, 1981, to pass the entire amount of the available investment tax credit to petitioner as lessee. At the same time petitioner executed the lease agreement on November 15, 1981, he contracted with Signal Records (Signal) for 1,000 copies of the master recording. Signal also agreed to market the product. Subsequently, Signal sent petitioner a report for the 6-month period ending June 30, 1982, indicating that 16 copies of the master cassette had been sold and requesting that petitioner renew his distribution contract with them. Petitioner declined to renew the contract and inquired as to the location of the remaining unsold 984 cassettes. In October 1982, petitioner wrote a second letter *574 to Signal requesting that they return the master recording to EMCI and refund his $ 1,000 payment. On or about October 19, 1982, Signal returned the master tape to petitioner. After listening to the tape for the first time, petitioner wrote to the president of EMCI, Mr. Schustack, complaining of its quality. Petitioner subsequently contacted another production and distribution company. However, petitioner made no further efforts to market his cassettes. Petitioner was never able to verify that 1,000 copies of the master recording had ever been produced by Signal. Respondent, in the notices of deficiency for the years in issue, disallowed the master recording lease payments which petitioners deducted in 1981 and 1983 as well as the investment credit claimed in 1981 and carried back to 1978 and 1979 and carried forward to 1983 and 1984. OPINION The primary issue for decision is whether petitioners are entitled to deductions for lease payments and to investment credits with respect to petitioner's master recording lease transaction with EMCI. Petitioner contends that his participation in the EMCI program was profit motivated and that petitioners are therefore entitled to the *575 claimed deductions and credits. Respondent contends that EMCI was a generic tax shelter and that the master recording lease transaction in issue lacked economic substance and should therefore be disregarded for Federal income tax purposes. Petitioners bear the burden of proving that respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). In determining whether the EMCI master recording lease program was a generic tax shelter respondent relies upon the objective standards established by this Court in Rose v. Commissioner, 88 T.C. 386 (1987), affd. 868 F.2d 851 (6th Cir. 1989). In Rose, 88 T.C. at 412, we articulated certain characteristics generally shared by generic tax shelters, such as: (1) Tax benefits were the focus of promotional materials; (2) the investors accepted the terms of purchase without price negotiation; (3) the assets in question consist of packages of purported rights, difficult to value in the abstract and substantially overvalued in relation to tangible property included as part of the package; (4) *576 the tangible assets were acquired or created at a relatively small cost shortly prior to the transactions in question; and (5) the bulk of the consideration was deferred by promissory notes, nonrecourse in form or in substance. * * * A review of the facts involved herein leads inexorably to the conclusion that EMCI's master lease program was a generic tax shelter. EMCI's promotional brochure focused largely on the tax benefits to be gained by the master recording leasing program. A substantial portion of the brochure was dedicated to explaining the tax advantages of the transaction and the potential challenges by the IRS. Participants in the EMCI master tape leasing program paid a nonnegotiable amount of $ 9,500 (which was treated as prepaid rental) for their master tapes. The assets acquired by petitioner in the master tape, i.e., the right to duplicate the master cassette and market the copies, are difficult to value, and the value of the tangible property acquired, as demonstrated by the evidence, was insignificant. In addition, the bulk of EMCI's consideration for purchase of the master tape was deferred by a promissory note in the amount of $ 180,000 which was to be paid *577 from the sale proceeds derived through the marketing of the master tape. Petitioner was not liable for any portion of said note. In light of these circumstances, we find that EMCI's master recording lease program was a generic tax shelter. We must next determine whether petitioner's investment in the EMCI's master leasing program lacks economic substance and should therefore be disregarded for Federal income tax purposes. Indicators of the presence or lack of economic substance include the presence or absence of arm's-length price negotiations, taxpayers' investment activities, and the relationship between the sales price and fair market value. Rose v. Commissioner, supra at 410-411; see also Rybak v. Commissioner, 91 T.C. 524 (1988); Patin v. Commissioner, 88 T.C. 1086 (1987), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), *578 affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989). The absence of arm's-length negotiations is a key indicator that a transaction lacks economic substance, Rybak v. Commissioner, supra at 537. In the present case the record clearly indicates that negotiations did not take place between petitioner and EMCI concerning the cost of the lease. The record also clearly establishes that petitioner did not investigate the leasing program before signing the lease. Petitioner made no attempt to verify the information contained in the promotional brochure. He conducted no independent investigation of EMCI or of the market potential of his cassette. Instead, petitioner relied extensively on the brochure and Mr. Felton's recommendations in deciding to invest in EMCI. We note in this respect that petitioner's contention that his prior familiarity with the recording business made it unnecessary to make any effort to evaluate the EMCI master leasing program is singularly unpersuasive. We hold that the amount of $ 9,500 paid by petitioner to lease the master recording bears no relation to the fair market value *579 of the master recording. Charles J. Selden (Mr. Selden) testified as an expert witness on behalf of respondent. Mr. Selden is chief executive officer of FP Video Services which markets and produces video cassettes and audio cassettes in the special interest area. Mr. Selden has over 20 years' experience in the cassette production business and holds a degree in film and broadcasting from Stanford University, an M.B.A. from Pepperdine University, and an M.A. in English and creative writing from the University of Iowa. After listening to the cassette and taking into account its uninspired packaging format, Mr. Selden assigned a fair market value of zero to the cassette. He also estimated that the master cassette would cost no more than $ 350 to produce originally. We found Mr. Selden's testimony to be highly credible and we accept his valuation of the cassette and the cost estimate. It is apparent, therefore, that the $ 9,500 paid by petitioner to lease the master recording from EMCI bears no relation to its fair market value. Moreover, the negligible fair market value of the recording underscores the arbitrariness and economic unreality of the $ 180,000 purchase price purportedly *580 paid for the master recording by EMCI. Petitioner's strained argument implying that the cassette returned to him by Signal and used by the expert witness in his valuation report might not be a true copy of the master recording leased by petitioner is purely conjectural and without any support whatever in the record. Based on the above analysis, we hold that petitioner's participation in the EMCI master recording program was devoid of economic substance and was engaged in solely for income tax benefits. Consequently, this transaction is to be disregarded for Federal income tax purposes. See McCrary v. Commissioner, 92 T.C. 827, 844-849 (1989). Accordingly, petitioners are not entitled to any deductions or investment tax credits claimed in connection with such program. Respondent is sustained. Petitioner has advanced numerous contentions of the tax protester variety. Contentions of this nature have been repeatedly rejected by this and other Courts and it would serve no useful purpose to again discuss them here at any length. It will suffice to say that the appropriate delegation of authority to respondent to assess and collect taxes is established. *581 See Stamos v. Commissioner, 95 T.C. 624 (1990), affd. without published opinion 956 F.2d 1168 (9th Cir. 1992). Petitioner's contentions invoking the need for an Office of Management and Budget control number (OMB number) to establish the validity of various Internal Revenue Service tax forms have been considered and rejected by this Court. See Pekrul v. Commissioner, T.C. Memo. 1992-455. This Court has jurisdiction to redetermine a deficiency, notice of which has been sent by respondent to the taxpayer. See sec. 6214. Respondent's failure to follow prescribed procedures intended for internal agency operations does not rise to the level of a violation of the Due Process Clause of the Constitution. See Capitol Federal Savings & Loan v. Commissioner, 96 T.C. 204 (1991); Riland v. Commissioner, 79 T.C. 185 (1982). Petitioners' contention that respondent violated their constitutional rights by failing to grant them immunity and by using petitioner's returns and a copy of the master tape as evidence against him is wholly without merit. *582 See Kastigar v. United States, 406 U.S. 441, 445 (1972); Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982), affg. per curiam an unreported order of this Court; McCoy v. Commissioner, 76 T.C. 1027, 1028-1029 (1981), affd. 696 F.2d 1234 (9th Cir. 1983). Finally, petitioner's contention that certain Internal Revenue Service employees are subject to penalties under sections 7213 and 7214 is meritless. The cited sections pertain to acts which are criminal in nature. The Tax Court does not exercise criminal jurisdiction. In short, we reject petitioner's array of tax protester-type arguments as totally unfounded and wholly without merit. Sections 6653(a) and 6653(a)(1), as applicable, impose additions to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2), as applicable, imposes an addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence. For the purposes of these *583 sections, negligence is defined as the failure to exercise due care or to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners have the burden of proof. Rule 142(a). Apart from reviewing the promotional materials, petitioner made no meaningful investigation of the EMCI master leasing program prior to entering the lease transaction late in 1981. He made no effort to contact knowledgeable individuals about the economic viability of his venture into the EMCI program and did not question the highly laudatory economic projections featured in the EMCI brochure. He failed to contact any of the EMCI officers for relevant background information. Surprisingly, he did not listen to a copy of his master recording before he entered into the leasing program. Nor did he obtain a copy of, or listen to, any of the master recordings that were being leased by EMCI. Petitioner's unquestioning readiness to participate in the master *584 recording leasing program without any demonstrable effort to ascertain its economic merits belies his contention that he acted reasonably and was motivated by a profit objective. His indifference to the merits of the program clearly demonstrates a lack of due care in making the investment in the EMCI program. Petitioner's actions, under these circumstances, cannot be regarded as those of a reasonably prudent person. We conclude on this record that petitioners are liable for the additions to tax imposed by sections 6653(a) and 6653(a)(1) and (2). Respondent is sustained. Respondent determined additions to tax under section 6659(a) for the years 1978 and 1979 attributable to a valuation overstatement on a return filed after December 31, 1981. See Nielsen v. Commissioner, 87 T.C. 779 (1986). Section 6659(a) provides for an addition to tax for underpayment of tax attributable to valuation overstatements made on returns filed after December 31, 1981. A valuation overstatement exists if the value or adjusted basis of property claimed on a tax return equals or exceeds 150 percent of the correct amount of the value or basis of the property. Sec. 6659(c)(1). *585 On petitioners' 1981 return they claimed a pass-through basis for petitioner's master recording in the amount of $ 180,000 and a credit of $ 180,000 which was carried back to the years 1978 and 1979. We have found the master recording transaction to be devoid of economic substance and therefore it must be disregarded for Federal income tax purposes, and valuation of the master recording was an integral factor in such determination. Consequently, petitioners' correct adjusted basis in the master recording is zero. See Rose v. Commissioner, 88 T.C. 386, 425-426 (1987), affd. 868 F.2d 851 (6th Cir. 1989); Rybak v. Commissioner, 91 T.C. 524, 566-567 (1988); Harness v. Commissioner, T.C. Memo. 1991-321. Since the value claimed exceeds 150 percent of the correct value, we conclude that petitioners are liable for the section 6659(a) additions to tax as determined by respondent. Section 6621(c) provides for an increased rate of interest for any substantial underpayment (greater than $ 1,000) in any taxable year "attributable to one or more tax-motivated transactions". *586 The increased rate of interest applies to interest accruing after December 31, 1984, even through the transaction was entered into prior to that date. Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986). Section 6621(c)(3)(A)(i) includes within the statutory definition of a tax-motivated transaction "any valuation overstatement" within the meaning of section 6659(c). We have concluded that the pass-through basis of $ 180,000 for the master recording claimed on petitioners' 1981 return constituted a valuation overstatement. We conclude, therefore, that the increased rate of interest applies. Respondent is sustained on this issue. We next consider respondent's request for a penalty under section 6673(a)(1). The cited section provides for a penalty not to exceed a certain amount (now $ 25,000) payable to the United States when it appears to the Tax Court that proceedings before it have been instituted or maintained primarily for delay, or that the taxpayer's position in such proceedings is frivolous or groundless. It is abundantly evident that the master recording *587 leasing transaction involved here was chimerical in nature. This Court has rejected as meritless similar tax shelter schemes centered around a master recording leasing program which we found singularly devoid of any economic substance. Apperson v. Commissioner, T.C. Memo. 1987-571, affd. without published opinion 908 F.2d 975 (7th Cir. 1990); see also McCrary v. Commissioner, 92 T.C. 827 (1989). Petitioner failed to offer any distinguishing features in his EMCI investment to justify a different result here. Moreover, petitioner expounded at great length a plethora of time-worn and oft-rejected arguments of a tax-protester nature. We consider this resort to tax protester rhetoric an egregious abuse of the Court's process. The contentions and legal theories are specious and manifestly frivolous. The inescapable inference compelled by this record is that petitioner knowingly instituted and maintained this proceeding primarily for delay and has raised frivolous and groundless positions. We therefore conclude that petitioners are required to pay a penalty to the United States in the amount *588 of $ 5,000. An appropriate order will be issued restoring these cases to the general docket for disposition of remaining issues.