Jonas R. BRYANT, Carmen L. Bryant, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 90–1439.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1990.

Decided March 22, 1991.

Marvin L. Martin, Burgess L. Doan (argued), Cohen, Todd, Kite & Stanford, Cincinnti, Ohio, for petitioners-appellants.

Abraham N.M. Shashy, Jr., Chief Counsel, I.R.S., Office of Chief Counsel, Gary R. Allen, Acting Chief, Jonathan S. Cohen, Joan I. Oppenheimer, Howard M. Soloman (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, D.C., for respondent-appellee.

Before MARTIN and NELSON, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Taxpayers Jonas and Carmen Bryant appeal from a judgment of the Tax Court finding deficiencies in income tax for calendar years 1979 and 1982.[1] These deficiencies resulted from the Tax Court's finding that (1) the taxpayer could not deduct certain funds expended in 1979 for development of the Austin Silver Mine because the funds were the proceeds of a promissory note for which he was not at risk of real economic loss under Section 465; (2) the taxpayers' 1982 investment in the Summit Gold Mine lacked economic substance; and (3) the taxpayers failed to prove that travel and other expenditures made in 1982 in relation to the mines were ordinary and necessary business expenses or were properly substantiated.

For the reasons that follow, we reverse the deficiency judgment with respect to the 1979 investment in the Austin Silver Mine; we reverse the finding that the 1982 investment in the Summit Gold Mine lacked economic substance and remand to the Tax Court for a determination of whether the expenses claimed were otherwise deductible; and we affirm the judgment of the Tax Court disallowing the miscellaneous business expenses.

I.  BACKGROUND

Jonas Bryant, a ceramic engineer, was majority shareholder in American Magnetics Corporation (AMC).  Alan Brown, a metallurgical engineer, and Charles Ryan, an electrical engineer, owned the balance of the shares.  In 1978, AMC was purchased by Hitachi Metals Corporation. Bryant acted as plant manager during the transition period, and finally left the company completely in 1979.

In 1979, Alan Brown returned from a week at Austin Silver Mine with geological reports and engineering and financial data. Bryant, Brown and Charles Ryan reviewed

**1.** Jonas and Carmen Bryant were married in 1980.  Therefore, Carmen Bryant is a party only

to the appeal of the 1982 deficiency finding.

the data and discussed it with AMC's former CPA and former attorney. Based on these discussions and the data brought back by Brown, all three of AMC's former shareholders decided to invest in Austin Silver Mine.

*Calendar Year 1979*

Bryant purchased from the owner of the Austin mineral claim the right to remove sufficient ore out of the mine to recover 83,600 troy ounces of silver. He then contracted with Manhattan Consolidated Gold Mines, Inc. for $380,000 in mine development work. He paid $95,000 in cash and financed the balance through an instalment promissory note payable to Equitable Corporation, his agent and the promoter of the investment. Bryant refinanced the Equitable note in 1985 with a new note that was secured by a mortgage on his residence. The record shows that the house was appraised prior to the execution of the mortgage and that the mortgage was properly recorded in due course.

Bryant deducted the mine development expenses in 1979, producing a Schedule C loss of $380,000. The Commissioner of the Internal Revenue Service (IRS) disallowed the full amount of the deduction and issued a deficiency notice. On review, the Tax Court allowed deduction of the $95,000 cash invested but held that Bryant was not at risk of loss in 1979 for the $285,000 note. Accordingly the Tax Court found a deficiency for 1979 of $141,450.27.

*Calendar Year 1982*

In 1982, Bryant obtained the right to mine 1,500 tons of ore from the Summit Gold Mine. He contracted for $60,000 of development work on this mine, again financing three-quarters of the cost through Equitable. Bryant deducted the full $60,000 of mine development expenses in 1982. He also deducted $10,000 for interest paid on the Equitable note for the Austin mine development expenses, and $1,766 for legal, travel and miscellaneous business expenses related to the mining ventures.

The Commissioner disallowed all of these expenses. The Tax Court allowed deduction of the interest expense, but disallowed the remaining expenses, holding that the Summit Gold Mine investment lacked economic substance and that the other expenditures were not properly documented pursuant to Regulation § 1.274–5(c)(2).

II. DISCUSSION

*Calendar Year 1979—The Austin Silver Mine*

Internal Revenue Code Section 465(a)(1) generally limits the deduction of losses incurred in a trade or business to the aggregate amount for which the taxpayer is at risk of real economic loss. Section 465(b) describes amounts considered to be "at risk." Under § 465(b)(1)–(2), a taxpayer is at risk for borrowed amounts to the extent that he is personally liable on the debt or has pledged property other than that used in the activity to secure the debt. However, amounts borrowed from a person who has an interest in the investment activity or from a person related to such a person (other than the taxpayer) are not considered at risk under § 465(b)(3). Additionally, § 465(b)(4) provides that "Notwithstanding any other provision of this section, a taxpayer shall not be considered at risk with respect to amounts protected against loss through nonrecourse financing, guarantees, stop loss agreements, or other similar arrangements." Neither the Code, the regulations, nor the legislative history defines "other similar arrangements." However, the legislative history does reflect concern with situations in which investors are effectively immunized from any realistic possibility of economic loss even if the underlying transaction is unprofitable.

The Tax Court found that Bryant was not at risk on the Equitable note for the Austin Silver Mine investment under § 465(b)(4) because it found that a provision in the mining contract between Bryant and Manhattan effectively insulated Bryant from loss. That finding was based on Paragraph 13 of that contract, which includes the following provision:

... In no event shall Lessee be personally liable for the payments or the performance of the Miner other than from

proceeds derived from the production and sale of silver and in the event of any default, no deficiency or other personal judgment will be requested or entered against Lessee with respect to the obligations contained herein.

Equitable, the creditor, was not a party to the mining contract and therefore was not signatory to Paragraph 13. However, the court held that because the mining contract was the underlying obligation for the promissory note to Equitable, a provision within the mining contract protecting Bryant from personal liability effectively sheltered him from personal liability on the note. Accordingly, the Tax Court held that Bryant could deduct only the $95,000 cash expended for the mine development expenses in 1979.

■ We cannot adopt the Tax Court's reasoning. The mining contract may have protected Bryant against personal liability to Manhattan if Manhattan had not received payment. However, the Tax Court made a factual finding that Manhattan had received a note from Equitable for the $285,000 that Equitable lent to Bryant and that that note was paid in December of 1979. Therefore, Manhattan had received full payment for the development work from Equitable, and consequently, by the close of tax year 1979 the mining contract provision had no effect with regard to the development portion of the contract at issue here.

Furthermore, there is no basis in the record for finding that Equitable would have declined, due to the mining contract provisions, to enforce the note against Bryant. The Tax Court found that the note between Bryant and Equitable was recourse on its face and that there was no security agreement between Bryant and Equitable limiting payment to the proceeds from the mineral claim. The court also noted that Bryant testified that there was no side agreement making the note contingent on the profitability of the mine, and the court expressly found that the debt was not contingent. Moreover, counsel for the Commissioner agreed at oral argument that if Equitable were to seek judicial en-

forcement of the note, Bryant could not raise the mining contract provision as a defense. Accordingly, we find that Bryant was at risk for the promissory note to Equitable in 1979. The Tax Court found that the proceeds of the note were expended for development of a commercially viable mine and this finding has not been challenged on appeal. Consequently, we find that these expenses were properly deducted under § 616(a), and therefore we reverse the Tax Court's finding of deficiency for the year 1979.

*Calendar Year 1982—The Summit Gold Mine*

■ Section 616(a) of the Internal Revenue Code allows taxpayers to deduct "all expenditures paid or incurred during the taxable year for the development of a mine or other natural deposit ... if paid or incurred after the existence of ores or minerals in commercially marketable quantities has been disclosed." A taxpayer may deduct development costs only if the primary objective of the mining venture was to make a profit. *Collins v. Commissioner*, 857 F.2d 1383, 1385 (9th Cir.1988); § 183. However, the court shall not inquire into a transaction's primary objective until it determines that the transaction is not a sham. *Collins*, 857 F.2d at 1385; *Rose v. Commissioner*, 868 F.2d 851, 853 (6th Cir.1989).

■ We review the Tax Court's factual findings under a clearly erroneous standard, but we review de novo the legal standard applied in determining whether or not a transaction is a sham. *Rose v. Commissioner*, 868 F.2d at 853. As we stated in *Rose*, "the proper standard in determining if a transaction is a sham is whether the transaction has any practicable economic effects other than the creation of income tax losses. A taxpayer's subjective business purpose and the transaction's objective economic substance may be relevant to this inquiry." *Id.* (citations omitted).

The Tax Court disallowed the mine development deductions for the Summit Gold Mine because it found that this investment lacked economic substance. Taxpayer's expert witness, Earl Harrison, had testified that based on assays of ore from the mine,

Bryant would approximately double his investment. However, the Tax Court found that the gold yield estimated by taxpayer's expert was unrealistic. The court substituted an average yield from assays done several years before and after the taxpayer purchased rights in the Summit Mine and found that the $60,000 investment would result in a loss of approximately $20,000. Based on this revised estimate of the mine's profitability, the Tax Court found that the investment lacked economic substance, and therefore that the investment was a sham.

■ The Tax Court's independent financial analysis of the merits of the Summit Gold Mine as an investment was improper and we therefore reverse and remand for further proceedings. As stated above, the question of whether a transaction has economic substance is a threshold issue designed to winnow out the most abusive tax shelters without engaging in the more difficult question of whether a transaction was profit-motivated. Therefore, in determining whether a transaction was a sham, the court should not address whether, in the light of hindsight, the taxpayer made a wise investment, as did the trial court here. Instead, the court must address whether the taxpayer made a *bona fide* investment at all or whether he merely purchased tax deductions. In this case, it is clear from the record that the Summit Gold Mine was a *bona fide* operating mine. Indeed, the Tax Court expressly found that by October of 1984, over 1.6 million dollars had been spent developing the mine, and hundreds of tons of ore were mined from Summit before it ceased operations in 1986, due in part to stricter federal regulation. Based on these facts expressly found by the trial court, and the trial court's express finding that Bryant used the same analyses and evaluations in making the decision to invest in Summit that he used in his previous mining investments, the Summit Gold Mine transaction clearly was not a sham. Accordingly, we reverse the Tax Court's judgment of deficiency with respect to the Summit Gold Mine investment.

■ Having determined that the transaction was not a sham, the next question to be addressed is whether the taxpayer engaged in the mining venture for the primary purpose of making a profit. *Rose,* 868 F.2d at 853. The Tax Court did not reach this question because it found that the transaction lacked economic substance. However, to the extent that the court's prior opinion could be read as finding no profit motive, we again reject the Tax Court's approach. The Tax Court's analysis probes whether the taxpayer could have had a reasonable expectation of profit. However, Congress expressly rejected this standard when it established the profit motive requirement in § 183.[2]

The legislative history to § 183 indicates that:

> ... in determining whether losses from an activity are to be allowed, the focus is to be on whether the activity is engaged in for profit rather than whether it is carried on with a reasonable expectation of profit. This will prevent the rule from being applicable to situations where many would consider that it is not reasonable to expect an activity to result in a profit even though the evidence available indicates that the activity is actually engaged in for profit. For example, it might be argued that there was not a "reasonable" expectation of profit in the case of a bona fide inventor or a person who invests in a wildcat oil well.... The committee does not believe that this provision should apply to these situations ... if the activity actually is engaged in for profit.

S.Rep. No. 552, 91st Cong., 1st Sess., *reprinted in* 1969 U.S.Code Cong. & Admin. News 1645, 2027, 2133–34.

This section was enacted to prevent taxpayers from offsetting their business income with losses from hobbies. However,

---

**2.** Section 183 provides:

(a) General Rule—In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section.

the section as enacted is not limited to losses from hobbies, disallowing deductions for any activity for which deductions would not be allowable under § 162, Trade or Business Expenses, or § 212, Expenses for the Production of Income. Indeed, the reference in the legislative history to investors in wild cat oil wells demonstrates that Congress clearly anticipated application of this Section to situations in which the hobby/business issue was not present. We therefore expressly rely on this statute for determining whether deductions shall be allowed for tax-sheltered investments.

The Senate Report also provides guidance on how the existence of a profit motive should be determined:

> In making the determination of whether an activity is not engaged in for profit, the committee intends that an objective rather than a subjective approach be employed. Thus, although a reasonable expectation of profit is not to be required, the facts and circumstances (without regard to the taxpayer's subjective intent) would have to indicate that the taxpayer entered the activity, or continued the activity, with the objective of making a profit. As previously indicated, a taxpayer who engaged in an activity in which there was a small chance for a large profit, such as a person who invested in a wildcat oil well or an inventor, could qualify under this test even though the expectation of profit might be considered unreasonable.

*Id.*

Therefore, on remand, the court should not engage in an independent inquiry of whether the Summit Gold Mine was *likely* to be profitable. Instead, the court should determine from the facts and circumstances surrounding the investment whether the taxpayer entered the activity with the objective of making a profit, keeping in mind that a small chance of making a large profit can support a profit motive. Accordingly, if on remand the court finds credible Earl Harrison's testimony that, due to the type of ore system involved, Bryant's mineral lease could have included a "cross-faulted" area that would have resulted in a large recovery of gold in a short time, the court should find that the profit motive requirement was satisfied.

*Calendar Year 1982—Schedule C Expenses*

■ The final issue before this court on appeal is whether the Tax Court properly found that the taxpayers failed to prove that legal, travel and miscellaneous expenses deducted on Schedule C of taxpayers' 1982 income tax return were ordinary and necessary business expenses deductible under § 162(a) or that the travel expenditures were properly substantiated under § 274(d).

The record shows that the parties stipulated to the amount of the travel and entertainment expenses. However, counsel for the Commissioner expressly disputed the deductibility of the amounts. Taxpayers made no attempt to prove that these amounts were ordinary and necessary expenses of their mining business or to show that they had maintained the documentation required by § 274(d) and the regulations thereunder. Accordingly, the Tax Court properly held that the taxpayers failed to sustain their burden of proof on these items.

The miscellaneous expense items were not included in the stipulation. Nevertheless, the taxpayers produced no evidence of the amount of these items nor did they show that the expenses were ordinary and necessary to the operation of their mining business. Therefore, the Tax Court properly held that the taxpayers failed to sustain their burden of proof on the miscellaneous expense items.

Accordingly, we affirm the judgment of the Tax Court finding a deficiency in income tax resulting from the disallowance of $1,766 in miscellaneous business expenses on taxpayers' 1982 return.

## III. Conclusion

For the reasons set forth above, the judgment of the Tax Court finding a deficiency in income tax for the year 1979 is REVERSED. The judgment of the Tax Court finding a deficiency in income tax for the year 1982 resulting from the court's find-

ing that the investment in the Summit Gold Mine was a sham is REVERSED and REMAND-ED for further consideration not inconsistent with this opinion. Finally, the judgment of the Tax Court finding a deficiency in income tax for the year 1982 resulting from the disallowance of $1,766 in miscellaneous business expenses is AFFIRMED.