996 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Harold M. PROVIZER and Joan Provizer, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 92-1827.
 United States Court of Appeals, Sixth Circuit.
 July 7, 1993.
 
 Before KEITH and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioners appeal from a decision of the United States Tax Court determining their liability for income tax deficiencies for the year 1981. They also appeal the Tax Court's decision assessing penalties on the deficiency for valuation understatement and negligence. After reviewing the record, we conclude that the Tax Court made no clearly erroneous findings of fact and correctly resolved all of the legal issues in this case, and we affirm on the basis of the Tax Court's opinion. Provizer v. Commissioner, 63 T.C.M. (CCH) 2531 (1992). We write briefly for additional clarification.
 
 
 2
 * The issues in this case center around a complex six-step transaction involving the sale and lease of six machines designed to recycle plastic scrap. The facts are set out more fully in the fifty-two page opinion of the Tax Court, but a fair summary is as follows: In 1981, a corporation called Packaging Industries, Inc. manufactured and sold six Sentinel EPE Recyclers to ECI Corporation for $5,886,000 ($981,000 each) which in turn resold the recyclers to F & G Corporation for $6,976,000 ($1,162,666 each). F & G leased the recyclers to a limited partnership called Clearwater Group, and Clearwater then licensed the recyclers to FMEC Corporation, which sublicensed them back to Packaging Industries. These transactions were structured in such a way that all of the payments between the entities offset each other. Packaging Industries then allegedly sublicensed the recyclers to entities who would use them to recycle plastic scrap. (These six transactions are hereinafter collectively referred to as the "Clearwater Transaction.")
 
 
 3
 In November, 1981, the petitioners, Harold and Joan Provizer, purchased for $8,333 a share of a general partnership, DL & Associates, that owned a limited partnership share of Clearwater. Through Clearwater, they were able to deduct from their 1981 tax bill an investment tax credit of $7,195 and an additional $7,195 as a business energy investment credit on the recyclers, and $6,668 for Clearwater's operating loss.
 
 
 4
 In April, 1986, the IRS issued a deficiency notice to the Provizers claiming a $17,724 deficiency in the Provizers' 1981 payment of income tax. The IRS disallowed all of the deductions and credits that the Provizers received from Clearwater on the ground that the Clearwater Transaction was a sham. The IRS also assessed a $4,317 penalty for valuation overstatement and an additional penalty of $866 plus 50% of the interest due on the deficiency for negligent underpayment of taxes. The Provizers filed a timely petition in Tax Court arguing that the sham transaction doctrine should not apply to the Clearwater Transaction because, they contended, the lease between F & G and Clearwater met the requirements of the safe harbor provision for leases under section 168(f)(8) of the 1981 Tax Code.[1] 26 U.S.C. § 168(f)(8) (1982). They also contested the penalties.
 
 
 5
 The Tax Court, in its detailed memorandum opinion, rejected the Provizers' contention that the Clearwater Transaction was protected by the § 168(f)(8) safe harbor and concluded that the transaction was indeed a sham because it lacked economic substance and a business purpose. The Tax Court also upheld the penalty for valuation overstatement, finding that the actual value of the recyclers was around $50,000 rather than the $1,162,666 each that the F & G Corporation paid for them. Since, it concluded, the underpayment of taxes was directly related to the valuation overstatement, the penalty was appropriate. It also concluded that the IRS correctly assessed the negligence penalty.
 
 
 6
 On appeal to this court, the Provizers again contend that the § 168(f)(8) safe harbor protects the Clearwater Transaction from application of the sham transaction doctrine. They also contend that the Tax Court's determination that the transaction was a sham is erroneous. Additionally, they contest the valuation overstatement penalties and negligence penalties.
 
 II
 
 7
 We turn first to the Provizers' contention that the § 168(f)(8) safe harbor prevents the IRS from inquiring into the economic substance of the Clearwater Transaction. We can find nothing in the language or legislative history of § 168(f)(8) that indicates that Congress intended for § 168(f)(8) to protect a whole series of planned transactions of which a lease is but a part.[2] Accordingly, we conclude that the Tax Court could properly apply the sham transaction doctrine to the case at bar if the transaction was shown to be a sham.
 
 
 8
 We further conclude that Tax Court correctly determined that the transaction was indeed a sham. A transaction is a sham if it has no economic substance and the taxpayer did not engage in the transaction with any business purpose other than to generate tax benefits. Bryant v. Commissioner, 928 F.2d 745, 748 (6th Cir.1991); Rose v. Commissioner, 868 F.2d 851, 853 (6th Cir.1989). Given that F & G paid $1,166,000 each for the recyclers, there was little opportunity for Clearwater to realize an economic profit from this transaction. Further, two of the recyclers ostensibly leased by Clearwater were broken in 1981 and were never put into service, and the machines that were put into service were used only sparingly. The record also reveals that Packaging Industries insured the recyclers against risk of loss or destruction for $55,000 per machine with a $25,000 deductible. We also note that Sam Winer, the sole general partner of Clearwater, had no experience in the plastics industry and devoted little time to managing the business activities of Clearwater. Thus, we conclude that the Tax Court correctly concluded that the Clearwater Transaction was a sham because it had no business purpose other than to generate tax benefits and had little opportunity to make an economic profit.
 
 III
 
 9
 The Provizers next contend that the Tax Court erred in imposing a penalty for valuation overstatement. Section 6659 of the Tax Code permits the Commissioner to assess a penalty on any underpayment of tax due to a valuation overstatement. 26 U.S.C. § 6659 (1982). The Provizers contend that this penalty is inappropriate in this case because the underpayment was caused by the IRS' disallowance of the entire deduction on the basis that the transaction was a sham, not simply by a valuation overstatement.
 
 
 10
 In Illes v. Commissioner, 982 F.2d 163, 167 (6th Cir.1992), this court held that when an underpayment of taxes is caused by disallowance of a deduction for lack of economic substance and the lack of economic substance is due to an overvaluation, "the deficiency is attributable to an overstatement of value and is subject to the penalty under section 6659." In the case at bar, the transaction was found to be a sham largely because the recyclers were overvalued; thus, under our rule in Illes, we conclude that the valuation overstatement penalty assessed in the instant case was appropriate.
 
 IV
 
 11
 The Provizers next contend that the Tax Court erred in assessing a penalty for negligent underpayment of taxes pursuant to § 6653(a) of the Code. 26 U.S.C. § 6653(a) (1982). Our review of the record, however, convinces us that the Tax Court correctly assessed the negligence penalty against the Provizers.
 
 V
 
 12
 For the reasons stated above, we AFFIRM the decision of the Tax Court on the basis of its opinion.[3]
 
 
 
 [1]
 Section 168(f)(8) was enacted as part of the Economic Recovery Tax Act of 1981, Pub.L. No. 97-34, § 201(f)(8), 95 Stat. 172, 214-15 (1981), and has since been repealed by the Deficit Reduction Act of 1984, Pub.L. No. 98-369, § 12(b), 98 Stat. 494, 504 (1984)
 
 
 [2]
 The Tax Court declined to decide whether the lease did indeed comply with the § 168(f)(8) safe harbor, reasoning that such a determination was not necessary because the lease could not be separated from the rest of the Clearwater Transaction
 
 
 [3]
 The court acknowledges receipt of the appellants' letter addendum to their brief dated June 22, 1993. After consideration, we do not feel that the Carmagnola reports would change the result of this case