Harry C. ROACH; Patricia L. Roach; Larry A. Neuman; Carol T. Neuman; Bruce L. Brock; Mary Lee Brock, Plaintiffs–Appellees, Cross–Appellants,

Robert T. Nelson; Ruth Nelson; Victor B. Lane; Jean M. Lane; Andrew P. Barton, Jr.; Ann L. Barton, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant, Cross–Appellee.

Nos. 95–3305, 95–3306.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 26, 1996.

Decided Feb. 11, 1997.

Paul B. Calico (briefed), Thomas C. Rink (argued), Strauss & Troy, Cincinnati, OH, for Harry C. Roach, Patricia L. Roach, Larry A. Neuman, Carol T. Neuman, Bruce L. Brock, Mary Lee Brock in Nos. 95–3305 and 95–3306.

Karen A. Smith, U.S. Department of Justice, Tax Division, Washington, DC, Gary R. Allen, Acting Chief (briefed), Kenneth W. Rosenberg (argued), Ann Belanger Durney, U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for U.S. in Nos. 95–3305 and 95–3306.

Thomas C. Rink, Strauss & Troy, Cincinnati, OH, for Robert T. Nelson, Ruth Nelson,

Victor B. Lane, Jean M. Lane, Andrew P. Barton, Jr.; Ann L. Barton in No. 95–3305.

Before: SUHRHEINRICH and MOORE, Circuit Judges; McKINLEY, District Judge.[*]

SUHRHEINRICH, J., delivered the opinion of the court, in which MOORE, J., joined. McKINLEY, D.J. (p. 726), delivered a separate dissenting opinion.

SUHRHEINRICH, Circuit Judge.

Defendant United States appeals and plaintiff taxpayers cross-appeal from the district court's partial grant and partial denial of plaintiffs' and defendant's cross motions for summary judgment on plaintiffs' claims for refund of income taxes. The parties disputed the amount of allowable depreciation from the sale and lease of plaintiffs' trucks. This Court **VACATES in part, REVERSES in part,** and **REMANDS** for proceedings consistent with this opinion.

## I.

The Plaintiffs are taxpayers Robert and Ruth Nelson ("Nelsons"), Harry and Patricia Roach ("Roaches"), Larry and Carol Neuman ("Neumans"), and Bruce and Mary Brock ("Brocks"). The defendant is the United States of America.

In 1980, Moore, Owen, Thomas & Company ("MOT"), purchased 250 trucks and leased them to Chemlawn Corporation for eight years ending December 31, 1988. MOT then sold the trucks, subject to the Chemlawn lease, to individual investors, such as these plaintiffs. Plaintiffs depreciated the trucks under the then current Class Life Asset Depreciation Range ("CLADR") system.[1] The CLADR system allowed Plaintiffs both to depreciate the trucks for their useful lives, less salvage value, and to accelerate the deductibility of this depreciation over a three year CLADR period. Plaintiffs claimed a useful life for the trucks that was longer than the eight-year term of the Chemlawn lease.

---

[*] The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

1. Internal Revenue Code § 167(m), 26 U.S.C. § 167(m) (West 1980), repealed by Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, 104 Stat. 1388, § 11812.

Finally, Plaintiffs deducted depreciation for the entire value of the trucks unreduced by any salvage value.

The Internal Revenue Service ("IRS") determined that the trucks' useful life equaled the length of the Chemlawn lease and had a salvage value of 40% of their original cost. Accordingly, the IRS disallowed 40% of the Plaintiffs' depreciation deduction and noticed a tax deficiency.

The Nelsons challenged the tax deficiency in Tax Court. The other Plaintiffs did not file any claim with the Tax Court. However, to resolve their disputes, all Plaintiffs purportedly entered closing agreements with the government stipulating to the amount of deductible depreciation for 1980 and 1981. Each of the closing agreements recited that it was "final and conclusive," but also recognized exceptions for malfeasance, or misrepresentation, and renegotiation of the lease of the trucks. Paragraph three of each of the closing agreements provided:

> [T]he taxpayers are entitled to no additional losses or deductions for depreciation with regard to the above transaction, except as set forth in paragraph 2 above, with the exception that if the taxpayers renegotiate a lease with the Chemlawn Corporation or any other third party, then salvage value may be redetermined at that time.

The timing and details of the plaintiffs' closing agreements differed. The Nelsons signed their agreement on December 4, 1987, and the government approved it on January 6, 1988. The Tax Court entered a stipulated decision on December 22, 1987. The Neumans signed their agreement on November 22, 1988. The government received it on December 14, 1988, and approved it on June 8, 1989. The Roaches' signed their agreement on May 26, 1988, but the government did not sign it. Neither the government nor the Brocks signed their agreement.

In October 1988, two months before the expiration of the Chemlawn lease, MOT[2] and Chemlawn entered a new lease of the trucks for the period October 1, 1988, to October 31,

1991. In December of 1988, all Plaintiffs filed claims for refunds for their 1982 and 1983 tax years because of the renegotiated leases. The IRS denied the refund claims. Plaintiffs then sued for a refund in district court. The parties filed cross-motions for summary judgment. Plaintiffs argued that (1) the closing agreements did not specify when the adjusted depreciation would be deductible, and (2) the adjustment did not alter the original period in which CLADR deductions were taken. The government argued that (1) retroactively deducting the depreciation would violate the annual accounting principle; (2) the language of the closing agreement permitted only prospective treatment; and (3) under 26 C.F.R. § 1.167(a)–1(c) the salvage value of a depreciable asset is fixed contemporaneously with any redetermination of its useful life.

The district court granted summary judgment to the Nelsons and denied summary judgment to the government on the Nelsons' refund claim. But the district court also granted summary judgment to the government and denied summary judgment to the Brocks, Neumans, and Roaches on their refund claims. Although the parties had not asserted or argued the point, the district court held that the Plaintiffs could redetermine their depreciation only if they formed their closing agreements before they renegotiated their leases. The district court reasoned the "plain meaning of the Closing Agreements allow[s] Taxpayers to redetermine the salvage value of the trucks based on any lease formed after the date of the Closing Agreement."

The district court permitted the Nelsons to amend their 1982 and 1983 depreciation deductions because the Nelsons and the government executed their closing agreement on January 6, 1988, before the October 1988 renegotiation of the Chemlawn leases between MOT and Chemlawn. However, the district court determined that the Neumans could not redetermine their depreciation deductions because they did not form their closing agreement until June 8, 1989, well after the October 1988 renegotiation. Simi-

---

**2.** MOT apparently did not own the trucks at this time because it had previously sold them to Plaintiffs. The record does not reflect the source of MOT's right to lease trucks that it did not own.

larly, the Brocks and Roaches also could not redetermine their depreciation deduction because the record did not reflect when they entered their closing agreements with the government. The district court reasoned that because they did not "produce evidence indicating the date their Closing Agreements were formed, they have failed to demonstrate that the prospective language in paragraph 3 applies to the October 1988 lease."

On the other hand, the district court held that the Nelsons could retrospectively adjust the trucks' salvage value and their resulting additional depreciation deduction for the years 1982 and 1983. The district court reasoned that the government had implicitly "bargained away" and "relinquished" the annual accounting principle when it agreed that the plaintiffs could redetermine the salvage value of the trucks upon renegotiation of the lease.

## II.

The government claims on appeal that the district court (1) did not have jurisdiction to hear the Nelsons' refund claim and, alternatively, (2) improperly permitted the Nelsons to adjust their depreciation deduction retroactively for the years 1982 and 1983, rather than prospectively from the renegotiation of the lease over the trucks' extended useful life.

Plaintiffs claim on appeal that (1) genuine issues of material fact exist as to the date of the Brocks', Neumans', and Roaches' closing agreements, thereby precluding summary judgment, and (2) renegotiation of the lease before executing the closing agreements did not preclude the Brocks, Neumans, and Roaches from adjusting their depreciation.

 This Court reviews factual determinations under the clearly erroneous standard. *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Bryant v. Commissioner,* 928 F.2d 745, 748 (6th Cir.1991). Questions of law are reviewed de novo. *Bryant,* 928 F.2d at 748. Closing agreements are contracts and generally are interpreted under ordinary contract principles. *See, e.g., Smith v. United States,* 850 F.2d 242, 245 (5th Cir.1988); *P.J. Maffei*

*Bldg. Wrecking Corp. v. United States,* 732 F.2d 913, 916 (Fed.Cir.1984). An ambiguous closing agreement will be interpreted in accord with the surrounding circumstances. *Overhauser v. United States,* 45 F.3d 1085, 1088 (7th Cir.1995)(holding that taxpayer's interpretation of closing agreement rejected as inconsistent with agreement's language and intent as determined from the circumstances of contract formation).

### A.

 For the first time the government contends on appeal that the district court lacked jurisdiction over the Nelsons' refund claim because they previously had litigated their tax liability for the years 1982 and 1983 before the Tax Court. A taxpayer may dispute a tax deficiency in either Tax Court or a federal district court. *Elbert v. Johnson,* 164 F.2d 421 (2nd Cir.1947). However, if the taxpayer proceeds in the Tax Court, the taxpayer may not sue for a refund in any other court. Title 26 United States Code Section 6512(a) provides:

> If the Secretary has mailed to the taxpayer a notice of deficiency . . . and if the taxpayer files a petition with the Tax Court . . . no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court.

*See United States v. Wolf,* 238 F.2d 447, 449 (9th Cir.1956). A district court must dismiss a refund claim relating to tax liability for a year previously determined by the Tax Court for lack of jurisdiction. *See Solitron Devices v. United States,* 862 F.2d 846, 848 (11th Cir.1989) (holding that district court lacked jurisdiction over taxpayer's claim to redetermine tax liability after taxpayer had litigated tax liability for subject year in Tax Court, even though issue to be litigated could not have been raised in prior litigation because it depended on post litigation events). *See also Dorl v. Commissioner,* 507 F.2d 406 (2nd Cir.1974); *Holzer v. United States,* 367 F.2d 822 (7th Cir.1966).

 Section 6512(a) also provides four exceptions to the "no suit" rule. The Nelsons claim an exception under Section 6512(a)(2), as a suit for recovery "[a]s to any amount

collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final." The Nelsons maintain that they qualify for this exemption. They argue that if the closing agreement and the Tax Court decision are read together, then they can redetermine their depreciation under the closing agreement, which would result in a tax liability less than the government already collected under the Tax Court decision.

The Nelsons' argument fails because they paid only the amount that the Tax Court's decision required. Contrary to the Nelsons' representations, the Tax Court's decision does not provide for a redetermination of the trucks' salvage value or resulting depreciation. It simply determines the Nelsons' tax deficiencies for the years 1982 and 1983. It does not identify the closing agreement or otherwise allow the parties to alter the liabilities for those years. Only the closing agreement provides for a redetermination of depreciation deductions upon renegotiation of the Chemlawn lease. But the closing agreement does not specify when the Nelsons could recognize the depreciation. Nor does the closing agreement otherwise implicate the finality of the Tax Court decision as to the Nelsons' stipulated tax liability for the years 1982 and 1983.

Accordingly, this Court finds that the district court did not have jurisdiction of the Nelsons' refund claim and will vacate the judgment of the district court as to the Nelsons.

### B.

■ The other Plaintiffs, the Brocks, Neumans, and Roaches, challenge the district court's determination that they could not redetermine the salvage value and resulting depreciation unless they executed their closing agreements with the government before they renegotiated their leases. They contend that the relative timing of the executed closing agreements and the renegotiated leases is irrelevant.

In *Rink v. Commissioner*, 47 F.3d 168 (6th Cir.1995),[3] this Court precluded Plaintiffs'

position. *Rink* involved similar truck leases with Chemlawn and essentially identical closing agreements as used here. In *Rink*, the taxpayer fully depreciated the trucks under the CLADR system and assumed a zero salvage value. After the IRS disallowed part of the depreciation, finding a substantial salvage value, the taxpayer and the government entered a closing agreement in October 1987. The taxpayer then claimed additional depreciation based on a renegotiated lease executed in December 1986, before he had signed the closing agreement. The government noted a tax deficiency, which the taxpayer challenged in the Tax Court. The Tax Court held that the closing agreement permitted redetermination only if the taxpayer executed the closing agreement before he renegotiated the lease. This Court affirmed stating:

> Both sides argue the syntactical and grammatical meaning to be given the phrase "if the taxpayers renegotiate a lease … then the salvage value may be redetermined at that time." (Closing Agreement at ¶ 3.) [footnote omitted] Rink's attempt to contort this language to his benefit fails in its entirety, as he would have this court ignore the plain meaning assigned to the words "if" and "then" to somehow refer to events that have already occurred, rather than refer to a future or prospective event. The plain and simple reading of the Agreement indicates that paragraph 3 is prospective and contemplates only a lease renegotiated after the execution of the agreement. Any other interpretation would make little sense and would effectively negate the stated purpose of the agreement.

*Rink,* 47 F.3d at 172.

Accordingly, the Brocks, Neumans, and Roaches, are entitled to deductions for additional depreciation only if they had executed their closing agreements before they renegotiated their leases.

### C.

■ The Brocks, Neumans, and Roaches also contend that the district court erred in granting summary judgment to the govern-

---

**3.** *Rink* was released after the district court issued its opinion.

ment on their refund claims because genuine issues of material fact existed as to the relative dates of their closing agreements and renegotiated leases. They maintain and the government admits that the parties did not dispute in the district court whether the adjusted depreciation was deductible, but only whether it was prospectively or retrospectively deductible.

Nevertheless, the district court *sua sponte* determined that the closing agreements only permitted redetermination of depreciation when the taxpayers renegotiated their leases after they executed their closing agreements. The district court found that the Neumans renegotiated their lease before they executed their closing agreement. However, the district court did not explicitly find that the Brocks and Roaches executed their closing agreements after they renegotiated their leases. Rather, the district court only found that the "record contains no information" as to the dates of the closing agreements. The district court concluded that the Brocks and Roaches failed to carry their burden and held that they could not redetermine their depreciation deductions.

The Brocks, Neumans, and Roaches maintain that the district court should have provided them an opportunity to brief this issue. They also represent that they can present proofs that they formed their closing agreements before they renegotiated their leases. Moreover, they claim that genuine issues of material fact exist as to when the Neumans renegotiated their lease. They admit that MOT leased the trucks to Chemlawn in October 1988, but represent that the Neumans did not lease their trucks to MOT until February 14, 1989, three months after they executed their closing agreement.

This Court agrees that genuine issues of material fact exist as to the dates that the Brocks, Neumans, and Roaches executed their closing agreements and renegotiated their leases. Accordingly, this Court will remand this matter to determine those issues.

### D.

If the Brocks, Neumans, and Roaches are entitled to additional deductions for adjusted depreciation, they should recognize it prospectively.[4] Under 26 C.F.R. § 1.167(b)–0, "the reasonableness of any claim for depreciation shall be determined upon the basis of conditions known to exist at the end of the period for which the return is made." As a general rule closing agreements conclusively resolve all tax disputes and preclude the filing of additional claims for refunds for the covered liability and period. Section 7121(b) provides that a closing agreement shall be "final and conclusive" except for fraud, malfeasance, or misrepresentation. *United States v. Bank of Commerce & Trust Co.,* 32 F.Supp. 942, 945 (W.D.Tenn.1940), *aff'd,* 124 F.2d 187 (6th Cir. 1941). *See also* Statement of Procedural Rules, 26 C.F.R. § 601.202(b) (a closing agreement is a final determination as to the specific matters covered and insures consistent treatment of similar issues in other taxable periods.) Further, additional depreciation resulting from adjustments to salvage value generally is not recognized retrospectively. In *Cohn v. United States,* 259 F.2d 371, 378 (6th Cir.1958), this circuit held that if a useful life is redetermined "the depreciation is not modified for prior years, but the remaining depreciation cost is spread ratably over the estimated remaining useful life and depreciation deductions taken accordingly for the current and succeeding years."

The district court found that the government "bargained away" the prospective recognition of the depreciation in the closing agreements. This finding is problematic. The closing agreements simply stipulated the amount of depreciation for the trucks' useful life under conditions known to exist at that time. Although the closing agreements contemplated possible renegotiation of the leases, they did not address retrospective or prospective recognition of any additional de-

---

4. The government claimed that the district court erred in permitting the Nelsons to recognize their additional depreciation deduction retrospectively in the original CLADR period, rather than prospectively from the date of the new

lease. Although this Court vacated the district court judgment for the Nelsons for lack of subject matter jurisdiction, this issue remains potentially relevant for the other claims on remand.

preciation. In the absence of any specific provision in the closing agreements for recognition of the additional depreciation within the original CLADR period, this Court would apply the general rule of *Cohn* that recognizes additional depreciation deductions ratably over the property's estimated remaining useful life without modifying prior depreciation deductions.

Accordingly, this Court determines that if the district court finds that the Brocks, Neumans, and Roaches are entitled to additional depreciation, then any additional depreciation should be recognized prospectively and not retrospectively.

### III.

Therefore, this Court **VACATES** the district court's judgment for the Nelsons for lack of subject matter jurisdiction.

Further, this Court **REVERSES** the judgment for the United States on the refund claims of the Brocks, Neumans, and Roaches and **REMANDS** to determine, consistent with this opinion, whether the Brocks, Neumans, and Roaches are entitled to additional depreciation.

McKINLEY, District Judge, dissenting.

I respectfully dissent from the majority's decision to remand to the district court for determination, consistent with its opinion, of whether the Brocks, Neumans and Roaches are entitled to additional depreciation if they executed their closing agreements with the government before they renegotiated their leases. I dissent from this part of the opinion because I believe that this Court's decision in *Rink v. Comm'r*, 47 F.3d 168 (6th Cir.1995), is not controlling given the facts of this case.

In *Rink*, the parties *disputed* whether the taxpayer could adjust depreciation based on renegotiation of a sham lease negotiated in 1986. Both courts necessarily looked to the plain meaning of the Closing Agreements to resolve this issue.

In the present case, as the majority opinion recognizes, the government and the taxpayers initially *agreed* that the plain meaning of the Closing Agreements allowed taxpayers to adjust depreciation based on their renegotiated leases. The only dispute between the parties was whether depreciation was allowable prospectively or retrospectively. Instead of resolving the parties' only dispute, the district court created another dispute involving *Rink*, and resolved it without first allowing the parties to address it. Of course, after the district court's opinion, the government began to dispute whether renegotiation of the Chemlawn leases in 1988 entitled the taxpayers to claim even prospective depreciation.

Whether the taxpayers were entitled to additional depreciation was never an issue between these parties until the district court made it an issue. The fact that it was not an issue between the parties indicates clearly that the parties intended for the taxpayers to be entitled to additional depreciation based on their renegotiated leases. The reliance upon *Rink* by the district court and the majority ignores the true intent of the parties in this case.

Based on the foregoing, I would remand with directions to the district court to ascertain the parties' intent on this issue, without suggesting that an application of *Rink* is necessarily dispositive of the matter. I do not think this Court should contravene what the parties heretofore agreed was their clear intent by applying its holding in *Rink*.