NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1119n.06

Nos. 10-4297/10-4560

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Oct 31, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ELFRIEDE WRAY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN UNITED LIFE INSURANCE | ) | ON APPEAL FROM THE UNITED |
| COMPANY, | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| Defendant-Appellant, | ) | |
| | ) | |
| JAMES ROBERT FLECK and SCOTT | ) | |
| ALLEN FLECK, | ) | |
| | ) | |
| Defendants. | ) | |

Before: SILER, DAUGHTREY, and WHITE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendant American United Life

Insurance Company appeals the judgment of the district court reversing an administrative

determination that plaintiff Elfriede Wray was not a designated beneficiary of James M.

Fleck's life insurance policy with American United. After the district court concluded that

Wray was indeed a proper beneficiary, however, the insurance company sought leave to

file a cross-claim against Fleck's two sons, James R. Fleck and Scott Fleck, in order to

recover insurance proceeds paid to them that the court concluded should have been

distributed to Wray. The district court denied leave to file the cross-claim, and American

United now also alleges error in that exercise of the court's discretion. We conclude that

the district court failed to engage in the proper analysis in deciding whether to permit the cross-claim and, therefore, reverse that portion of the judgment and remand the case to the district court for further consideration.

## FACTUAL AND PROCEDURAL BACKGROUND

American United sold a group life insurance policy to The Countrymark Co-op Member Group Benefits Plan Trust.[1]  As senior vice-president of Southwest Landmark, Inc., an "insured unit" under the policy, James M. Fleck was authorized to purchase life insurance from American United and did so.  The initial application filled out by Fleck was signed and dated on December 29, 2000, and did not give an indication on the form that any particular persons were to be listed as either "basic and supplemental insurance" beneficiaries or as "accidental death and dismemberment" beneficiaries.  Instead, a separate, undated, unsigned page also appearing in the record listed Fleck's then-wife Lynn, and his two sons as primary beneficiaries of the basic and supplemental life insurance policy and apportioned 20 percent of the proceeds of the policy to Lynn and 40 percent to each of the sons.

A subsequent application signed and dated by James M. Fleck on December 3, 2002, included the notation "See Attached" in the space provided for listing the primary beneficiary for the basic and supplemental life insurance proceeds.  A sheet, presumably

---

[1]The Group Benefits Plan Trust also contracted with The Hartford Life and Accident Insurance Company to provide accidental death and dismemberment coverage to qualified employees.

attached to the application, again lists Lynn, Scott, and James R. Fleck as primary life insurance beneficiaries, but adjusts the percentage portions to be received by those individuals to 10 percent for Lynn and 45 percent for each of the two sons.

Finally, on December 30, 2003, James M. Fleck signed and dated the policy application that is the focus of this litigation. On that form, the insured checked a box indicating that he wished to change the beneficiaries of the policy and, in the spaces provided on the form for designating the beneficiaries of the basic and supplemental life insurance policy and the accidental death and dismemberment policy, wrote the word "Attached." As with the 2000 and 2002 applications that either began coverage or changed the percentages to be distributed to the beneficiaries, the appellate record contains a copy of an additional sheet of paper that lists the names, addresses, and percentage distributions for the selected beneficiaries. The 2003 application attachment, however, removed Lynn Fleck (from whom James M. Fleck was then divorced) as a beneficiary, added Elfriede Wray as a primary beneficiary, and assigned one-third of the proceeds of the basic and supplemental life insurance to Wray and each of his two sons.

Unfortunately, James M. Fleck died in an automobile accident on June 16, 2007. Three days later, Gayle Wubbolding, the client services coordinator for Employee Benefit Management Corporation, an entity specializing in the servicing of self-funded benefit programs, contacted plaintiff Wray by letter and informed Wray that she was one of the three listed beneficiaries on James M. Fleck's life insurance policy and on his accidental

death and dismemberment policy. Wubbolding offered to file Wray's claim for benefits under the policies once Wray provided her with two certified copies of James M. Fleck's death certificate, Wray's birth date and Social Security number, the birth dates and Social Security numbers of James R. and Scott Fleck, the police report of James M. Fleck's accident, and any newspaper articles about the accident.

Wray evidently provided Wubbolding with the requested information because three months later, Wubbolding sent letters to both American United and to The Hartford enclosing the documentation necessary to secure payment of the insurance benefits to the three beneficiaries listed on the policy application. In both letters, Wubbolding further requested that the insurance companies contact her should they "have any questions or need any further information" regarding the claims.

Less than two weeks later, The Hartford mailed letters to the Fleck brothers and to Wray approving their claims under the accidental death policy. The Hartford then deposited one-third of the value of that policy into separate accounts for the benefit of each of the three individuals. But, Wray's dealings with American United were not as trouble-free. In two identical letters dated 11 days apart, the defendant insurance company, although expressing its condolences to Wray "for [her] loss," explained that "[b]ased on information submitted by the employer/policyholder, [there] is no signed and dated beneficiary designation. The proceeds under the insured's group life insurance policy are

payable to the 'Estate of James Fleck.'"  Thereafter, American United issued a check for the full amount of the policy, plus interest, to the "Estate of James Fleck" only.

In response, Wray filed an action against American United, Employee Benefit Management Corporation, James R. Fleck, and Scott Fleck in Ohio state court, seeking payment of one-third of the benefits of James M. Fleck's life insurance policy.  The case was eventually removed to federal court and the Employee Benefit Management Corporation was dismissed as a defendant.  After a hearing, the district court issued a written order that first concluded that Wray had adequately exhausted her administrative remedies in seeking to overturn the insurance company's adverse decision.  The district judge further ruled that Wray was not equitably estopped from pursuing her claim, and that the documents submitted to American United showed conclusively that James M. Fleck had indeed designated the plaintiff as a beneficiary of his life insurance policy. Consequently, the district court entered judgment in favor of Wray for one-third of the value of the policy, plus interest from the date of Fleck's death, and costs.

In light of the district court's ruling, American United moved for leave to file a cross-claim against James R. Fleck and Scott Fleck for recoupment of the money the insurance company had paid to the Estate of James M. Fleck instead of to Wray.  The district judge denied that motion, however, stating:

> The proposed cross claim states at ¶ 10 that "Because the beneficiary designation was not signed and dated as required by the [American United] policy, [American United] paid benefits to the Estate of the Decedent . . ."

>      This allegation is inconsistent with the law of the case as it presently stands. At page 12 of the court's order dated September 14, 2010, the court states that "Fleck completed a designation of beneficiary form which he signed and dated December 30, 2003." Doc. 52. The court will therefore deny defendant [American United]'s motion for leave to file its cross claim against the Fleck defendants on the ground that the proposed cross claim is inconsistent with the law of the case as it presently stands.

In that same order, the district court recognized that some of Wray's claims had not yet been resolved. Nevertheless, because appellate affirmance of the court's ruling on Wray's beneficiary status would render her claims against Scott and James R. Fleck moot, the district judge certified that issue for immediate appeal pursuant to the provisions of Federal Rule of Civil Procedure 54(b). Moreover, even though American United's proposed cross-claim against the Flecks would *not* be mooted by affirmance of the district court's ruling, the district judge noted:

>      Because the cross claim is closely related to plaintiff's claim against [American United], it would serve the interest of judicial economy for this court to certify its order denying [American United] leave to file the cross claim and allow the court of appeals to consider that issue at the same time it considers [American United]'s appeal of the judgment in favor of plaintiff on her claim against it.

American United now asks this court to overturn the conclusions reached by the district court on those two certified issues.

**DISCUSSION**

**Wray's Status As A Beneficiary**

American United challenges, on both procedural and substantive grounds, the district court's determination that Wray was a named beneficiary of James M. Fleck's life insurance policy. The company first asserts that the plaintiff did not exhaust her administrative remedies because Wray never personally submitted a claim for benefits. In advancing this argument, the insurance company contends that it received no documents directly from Wray. Instead, argues the company, it received a request for payment of the policy proceeds only from Employee Benefit Management Corporation, an entity that was neither Wray's actual agent nor her apparent agent.

Under Ohio law, however, an agent may bind a principal in the context of apparent authority if the evidence reflects:

> (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 662-63 (6th Cir. 2005) (quoting *Master Consol. Corp. v. BancOhio Nat'l Bank*, 575 N.E.2d 817, 822 (Ohio 1991)). Consequently, "[t]he apparent power of an agent is to be determined by the act *of the*

*principal and not by the acts of the agent . . .* [.]" *Id.* at 663 (brackets in original) (quoting *Master Consol. Corp.*, 575 N.E.2d at 822).

Plaintiff Wray has satisfied both prongs of the apparent authority test outlined in *Brainard*. First, the very fact that Wray did not file an insurance claim herself, but rather relied upon Wubbolding to do so on her behalf after providing Wubbolding with the necessary information to support the claim, is strong evidence that Wray had designated Employee Benefit Management Corporation as her agent for this limited purpose. Second, it is equally clear that American United treated Wubbolding as possessing the necessary authority to file a claim for benefits on Wray's behalf. Indeed, after receiving the claim filed by Wubbolding requesting payment to Wray, to Scott Fleck, and to James R. Fleck, American United evaluated the request as a properly-filed claim. Moreover, the insurance company's claim-denial letters were sent to Wray, unequivocally indicating the company's belief that the plaintiff had filed a request for payment through Wubbolding, who was also copied on the denial notification.

Wray clearly relied upon Wubbolding to file her benefits claim for her, and American United clearly treated that request by Wubbolding as a claim on Wray's behalf. Had the company not considered Wubbolding's letter of September 13, 2007, as a request for payment by Wray, there would have been no justification for the insurance company's letters of September 27 and October 8, 2007, informing Wray that she was not considered a proper beneficiary of the policy by American United. The record before this court thus

unequivocally supports the district court's conclusion that Wray did, in fact, file a claim for benefits under James M. Fleck's life insurance policy. We reject American United's assertion to the contrary out-of-hand.

In a corollary to its exhaustion argument, the defendant insurer also alleges that Wray should have been equitably estopped from pursuing payment of benefits under James M. Fleck's life insurance policy because American United detrimentally relied upon the plaintiff's failure to file a claim for benefits in determining that only Scott and James R. Fleck were proper beneficiaries. Had Wray actually filed a claim for benefits, argues the defendant, the insurance company could have proceeded to determine who the proper beneficiaries of the policy were. The company thus contends that Wray, after receiving notification that she would not be paid under the policy, should have contested that determination by pursuing additional review by American United. Importantly, however, American United's denial letters of September 27 and October 8, 2007, never explained to the plaintiff the necessity of seeking such review, how such review could occur, or even that such review was possible. In light of the insurer's failure to outline the steps required to dispute an adverse claim determination, American United cannot successfully contend that the company detrimentally relied upon Wray's inaction or that her failure to continue to pursue review of which she was not aware somehow prejudiced American United.

Advancing two primary arguments, American United also challenges the district court's substantive ruling in this matter that James M. Fleck properly designated Wray as

a beneficiary of his life insurance policy. When a policy vests discretionary authority in a benefit-plan administrator to make eligibility decisions, we review those decisions under the highly deferential "arbitrary and capricious" standard. *Moos v. Square D Co.*, 72 F.3d 39, 41 (6th Cir. 1995). When, as here, however, no such discretion is accorded the decision-maker, a reviewing court examines benefits determinations *de novo*. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

American United's first argument to circumvent the district court's interpretation of the documents submitted to the company would require us to read into the relevant insurance policy additional language that the drafters of the provision did not include. The parties do not dispute that Section 13 of James M. Fleck's life insurance policy provided that an insured may change beneficiaries "at any time by written request" if the request is "(a) signed and dated; (b) filed through the Group Policyholder; and (3) sent immediately to [American United's] Home Office by the Group Policyholder." There is also no dispute that James M. Fleck's form to change beneficiaries was signed by Fleck and dated December 30, 2003. American United insists, nevertheless, that the additional page that listed the beneficiaries of the policy was *not* signed and dated and, thus, that the policyholder failed to comply with the policy terms. Nowhere in the policy, however, did the company insert language requiring that *every page* of a change-of-beneficiary form be signed and dated. Rather, the policy requires only that the change form somewhere contain the signature of the policyholder and the date on which the change was requested.

Hence, the change-of-beneficiary form submitted by James M. Fleck on December 30, 2003, fully satisfied the policy's requirements.

American United would have this court believe that the failure of an insured to sign and date every sheet of a change form, despite the absence of any contractual obligation to do so, makes it impossible for the company to determine whether a designated second sheet was actually attached to the form. Although conceding that the district court "may be correct" that the change-of-beneficiary form with the word "Attached" written on it "refers to some other document, [the company contends that] there is nothing in the record that makes it 'apparent' [that the separate sheet listing the beneficiaries and the percentages of the proceeds they were to receive] is in fact Mr. Fleck's beneficiary designation."

The district court made a factual determination that the sheet of paper submitted by the plaintiff as the list of beneficiaries of the policy was indeed the attachment to which Fleck referred on the pre-printed beneficiary information form. As with other factual determinations by a district court, we must accept those findings unless they are clearly erroneous. *See, e.g.*, *Roach v. United States*, 106 F.3d 720, 723 (6th Cir. 1997) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Far from being clearly erroneous, the factual finding of the district court in this regard is the only logical conclusion supported by the evidence in the record.

The form itself indicates that the reason the document was being submitted to American United was to change beneficiaries. To have submitted the form without a list

of the "new" beneficiaries would, therefore, have been useless. Because the space provided on the form to list the primary beneficiary of the basic and supplemental life insurance policy contains the word "Attached," it makes logical sense to conclude that an additional sheet of paper would also have been provided.

Moreover, both the company's preprinted form and the typewritten "attached" sheet listing the primary beneficiaries, their addresses, and the percentage of benefits to be received by them were stamped "RECEIVED BY GROUP LIFE CLAIMS" on the same date -- September 18, 2007. Because the second piece of paper listed James M. Fleck's sons as beneficiaries, because the preprinted form indicated that another sheet of paper would be attached, and because both sheets of paper were received by American United at the same time, it was not clearly erroneous for the district court to conclude that the designation of Wray as a one-third beneficiary of James M. Fleck's life insurance policy was part of a signed and dated document that complied with the terms of the policy.

Additional factors also support the factual determination of the district court that the undated, unsigned portion of the submission was part and parcel of the change-of-beneficiary form. For instance, American United's preprinted form allows the insured to name a person or persons as a primary beneficiary. The form, however, contains space for only one name and one address. Consequently, if an insured wished to have multiple primary beneficiaries, he or she would, by necessity, be required to attach additional sheets of paper to the form. Furthermore, the attached sheet submitted to American

United by Fleck includes the same headings – "primary beneficiary(ies)" and "basic and supplemental life" – as does the signed and dated form when designating the individuals entitled to benefits under the policy. For all these reasons, it makes perfect sense that the district court would conclude that the sheet designating Wray, James R. Fleck, and Scott Fleck as one-third beneficiaries under the life insurance policy was indeed a part of the signed and dated form submitted to American United.

American United's second argument in support of its interpretation of the documents presented to it proposes that James M. Fleck's December 30, 2003, change-of-beneficiary form could not have been intended to provide benefits to Wray because a later 2005 form did not list the plaintiff as a recipient of insurance proceeds. What American United conveniently ignores, however, is the self-evident fact that the 2005 form on which the defendant relies for its argument was not a form for designating James M. Fleck's life insurance beneficiaries. Instead, the highlighted 2005 form that has no listing of primary basic and supplemental life insurance beneficiaries is clearly denominated as a form to waive life insurance coverage on James M. Fleck's *dependents*. Because Fleck's sons were, at that time, approximately 20 and 30 years of age and no longer his dependents, James M. Fleck had no further need to pay premiums for *dependent* life insurance. In short, therefore, the form on which American United relies to support this argument is completely irrelevant to the issue on appeal. The district court thus did not err in concluding that the insurance company mistakenly denied benefits to plaintiff Wray as a beneficiary of James M. Fleck's life insurance policy.

**Denial Of Leave To File Cross-Claim**

After the district court ruled that Elfriede Wray was entitled to one-third of the proceeds from James M. Fleck's life insurance policy, American United sought leave to amend its answer to Wray's complaint in order to assert a cross-claim against James R. Fleck and Scott Fleck for return of the insurance proceeds that should have been paid to Wray but that were instead divided between the two sons. In paragraph 10 of the proposed cross-claim, American United alleged, "Because the beneficiary designation was not signed and dated as required by the [American United] policy, [American United] paid benefits to the Estate of the Decedent . . . ." Viewing that statement as "inconsistent with the law of the case as it presently stands," the district court denied American United leave to file the cross-claim for that reason.

Federal Rule of Civil Procedure 15(a)(2) provides that, at such a late stage in the proceedings, a party may amend its pleadings only with the consent of the parties or with the court's leave. The rule also provides, however, that the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "We generally review for abuse of discretion the denial of a motion for leave to amend . . ., but we review de novo a district court's determination that amendment would be futile." *Indah v. U.S. Sec. and Exch. Comm'n*, 661 F.3d 914, 924 n.6 (6th Cir. 2011) (citing *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003)).

In determining whether to grant a motion to amend:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). Moreover, "[w]hen amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Id.* at 459 (citation omitted).

In this case, the district court did not engage in a reasoned examination of the factors that we have identified as essential to assisting our review of a decision to deny leave to amend a pleading. Instead, the court simply focused upon one paragraph of the proposed cross-claim that identified the reason American United chose to deny benefits to the plaintiff and declared that it was against the law of the case. That the district court's claimed justification is insufficient does not, however, establish that leave to amend should be denied. In order to allow for a more reasoned evaluation of the merits of American United's motion, the district court's ruling regarding the request to amend must be reversed and the matter remanded for reconsideration in light of this court's statements in *Wade*.

**CONCLUSION**

An examination of the documents submitted on the plaintiff's behalf for payment of life insurance benefits establishes that James M. Fleck adequately informed American United of his intent to change his beneficiary designation to provide Elfriede Wray with one-third of the proceeds of his life insurance policy. We therefore AFFIRM that portion of the district court judgment reversing the administrative decision that denied life insurance benefits to plaintiff Wray. However, because the district court failed to examine factors identified by this court as crucial to determining whether to grant a motion to amend a pleading, we find it necessary to REVERSE the district court's denial of American United's motion for leave to file a cross-claim and REMAND the matter to the district court for further consideration of that matter.